## 61646. GILBERT v. THE STATE.

POPE, Judge.

James Arthur Gilbert, III was convicted of possessing cocaine in violation of the Georgia Controlled Substances Act. He brings this appeal following the trial court's denial of his motion for new trial.

The evidence at trial showed that at approximately six o'clock in the evening on Saturday, May 12, 1979, Officer Weldon of the Chamblee Police Department was giving flight instructions at the Peachtree-DeKalb Airport (located in the City of Chamblee, DeKalb County) when he heard a call for help over the radio in his airplane. The distress call emanated from the pilot of an airplane about 150 yards away. Officer Weldon immediately approached the airplane on foot and saw a Thunderbird automobile blocking the progress of the airplane on the taxiway; the airplane was stopped in a cater-cornered position across the ramp where airplanes are tied down.

Standing on the runway in front of the airplane was a man who immediately called to Officer Weldon to get help. He stated that drugs were being transported on the airplane and that his ex-wife was on board. Officer Weldon instructed the man to get back in his car and walked to the airplane to talk with its occupants, a male pilot and a female passenger. Officer Weldon identified himself to the occupants of the airplane as a Chamblee police officer and asked the male pilot to give him the keys to the airplane. The pilot was later identified by Officer Weldon as the appellant Gilbert. The female passenger was later identified as Carole Ethridge Mattei.

Meanwhile, the airport security officer, Officer Bennett, arrived on the scene. Officer Weldon used the radio in Officer Bennett's patrol vehicle to call for additional help from the Chamblee Police Department. Before leaving the occupants of the airplane, Officer Weldon instructed Officer Bennett to watch the situation while he radioed for assistance. When Officer Weldon returned to the scene, he was handed a small glass vial containing a white, powdery substance by Officer Bennett.

Two other Chamblee police officers, Westbrooks and Rose, arrived on the scene in two patrol cars. Since Sgt. Westbrooks was the senior officer, Officer Weldon turned over the investigation and the glass vial to him. Gilbert and Ms. Mattei were placed in the back of Sgt. Westbrooks' patrol car. While the officers were continuing their investigation, Ms. Mattei's ex-husband shouted, "They are making a switch." Sgt. Westbrooks turned and observed Ms. Mattei attempting to stuff a large plastic bag, filled with packets containing a white, powdery substance into the waistband of her tightly fitting blue jeans. Sgt. Westbrooks had not seen the bulge in Ms. Mattei's

pants when he had placed both subjects in his patrol car a few minutes earlier. He removed Gilbert and Ms. Mattei from his vehicle, searched them, and asked her to raise her blouse above her waistline while he removed the large, plastic bag from the waistband of her pants. Sgt. Westbrooks handcuffed Gilbert and Ms. Mattei and placed them in separate patrol cars. The content of the bag was shown to be cocaine.

1. In his first enumeration of error Gilbert contends that the trial court erred in failing to grant his motion to suppress the illegal drugs found on Ms. Mattei. Although the search was conducted on the person of Ms. Mattei, Gilbert contends that he had automatic standing to challenge the legality thereof because possession was an essential element of the offense with which he had been charged. In support of this contention, Gilbert cites Jones v. United States, 362 U. S. 257 (80 SC 725, 4 LE2d 697) (1960). However, Jones v. United States, supra, has been expressly overruled by the Supreme Court in the recent case of United States v. Salvucci, 448 U. S. 83 (100 SC — 65 LE2d 619) (1980), which held that persons "charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated." Id. at 85. The Supreme Court affirmed its holding in Rakas v. Illinois, 439 U. S. 128 (99 SC 421, 58 LE2d 387) (1978), that "an illegal search only violates the rights of those who have 'a legitimate expectation of privacy in the invaded place.' " United States v. Salvucci, supra at 91. Clearly, Gilbert had no legitimate expectation of privacy in Ms. Mattei's clothing. Accordingly, he had no standing to challenge the seizure of the cocaine from her blue jeans. Rawlings v. Kentucky, 448 U. S. 98 (100 SC—, 65 LE2d 633) (1980). Accord, Marshall v. State, 153 Ga. App. 198 (1) (264 SE2d 718) (1980).

2. Ms. Mattei testified at trial that she had never been employed as a model. Gilbert attempted to impeach her testimony by offering into evidence several photographs from the August, 1978 edition of "Gallery" magazine. The photographs depict Ms. Mattei and another cavorting about the seashore au naturel. In his second enumeration Gilbert argues that the trial court erred in excluding the photographs from evidence.

"A witness may be impeached by disproving the facts testified to by him." Code Ann. § 38-1802. However, while a witness may be impeached on a collateral issue which is indirectly material to the issue in the case (Glo-Ann Plastic Industries, Inc. v. Peak Textiles, Inc., 134 Ga. App. 924 (4) (216 SE2d 715)), a witness may not be impeached because of a discrepancy as to a wholly immaterial matter. Mann v. State, 124 Ga. 760 (4) (53 SE 324) (1905). Ms. Mattei's modeling career was wholly immaterial to the issue of Gilbert's guilt

of the crime charged. See, e.g., *Smith v. State,* 235 Ga. 327 (2a) (219 SE2d 440) (1975); *Johnson v. State,* 144 Ga. App. 406 (1) (240 SE2d 919) (1977); *Johnson v. Johnson,* 96 Ga. App. 84 (3a) (99 SE2d 352) (1957). Accordingly, this enumeration has no merit.

3. Both Gilbert and Ms. Mattei were indicted for violating the Georgia Controlled Substances Act by possessing cocaine. Ms. Mattei entered a plea of guilty and testified against Gilbert at trial. Gilbert contends that the testimony given by Ms. Mattei at trial, as that of an accomplice, was not corroborated as required by Code Ann. § 38-121. We disagree.

Ms. Mattei testified that she had known Gilbert for about five years. She stated that he had contacted her and asked her to contact some mutual friends in Miami, Florida for the purpose of purchasing cocaine. She went to visit Gilbert at his house, heard him call the bank and arrange to withdraw money. He told her he was withdrawing the money to purchase cocaine. Upon his return from the bank, she saw the money — eleven stacks of $1000 each. They immediately left for the Peachtree-DeKalb Airport in her automobile, a Thunderbird, and the defendant flew his Piper Cherokee airplane to Miami. They checked into a Holiday Inn where he purchased the subject cocaine from two men. The cocaine was packaged in two plastic bags inside a larger plastic bag, all of which was identified by Ms. Mattei at trial.

The next morning Gilbert and Ms. Mattei returned to the Peachtree-DeKalb Airport in his airplane; during the flight back the cocaine was carried in Gilbert's garment bag. Ms. Mattei also testified that Gilbert had a glass vial of cocaine in his shirt pocket and that both snorted from it on the return flight. Upon their arrival at the airport, Ms. Mattei's ex-husband pulled her car onto the runway and blocked their path. He got out of the car with a gun in his hand and began screaming, "Get out of the plane; I am going to kill you. I know you have drugs." At this point Gilbert radioed for help and instructed Ms. Mattei to "Get the cocaine . . . [i]n the back of the plane." She opened Gilbert's garment bag, retrieved the cocaine and handed it to him. He threw the vial of cocaine he had been carrying in his shirt pocket out the window. Officer Weldon appeared and identified himself as a police officer. Both Gilbert and Ms. Mattei were placed in the back of a patrol car. Gilbert passed the cocaine to Ms. Mattei stating, "They won't search you." Ms. Mattei stuffed the cocaine in the waistband of her blue jeans and heard her ex-husband scream, "They are switching it." At that point she and Gilbert were removed from the patrol car and searched; the subject cocaine was recovered from her by Sgt. Westbrooks.

"The rule is well established that, to sustain a conviction in a felony case upon the testimony of an accomplice, there must be

corroborating facts or circumstances, which, in themselves and independently of the testimony of the accomplice, directly connect the defendant with the crime, or lead to the inference that he is guilty, and more than sufficient to merely cast on the defendant a grave suspicion of guilt." *Price v. State,* 208 Ga. 695, 696 (69 SE2d 253) (1952). "This may be done by circumstantial as well as direct evidence. [Cit.] 'The sufficiency of the corroboration evidence is peculiarly a matter for the jury to determine. If the verdict is founded on slight evidence of corroboration connecting a defendant with the crime, the verdict is legally sufficient.'." *Stanford v. State,* 157 Ga. App. 633, 634 (278 SE2d 175) (1981).

The evidence at trial[1] showed that both Gilbert and Ms. Mattei were placed in the back seat of Sgt. Westbrooks' patrol car. When Ms. Mattei's ex-husband hollered that a switch was being made, Sgt. Westbrooks turned to see Ms. Mattei attempting to stuff a bag into the waistband in the front of her blue jeans. Sgt. Westbrooks then asked Ms. Mattei to step out of the patrol car. When she did so, Sgt. Westbrooks noticed a bulge in her tightly fitting blue jeans that had not been present when she first got into the patrol car. The evidence also showed that an unzipped man's garment bag was located in the airplane in a seat directly behind the seats in which Gilbert and Ms. Mattei had been sitting. We conclude that there was sufficient evidence for a rational trier of fact to find that Ms. Mattei's testimony was corroborated, and the evidence adduced at trial proved Gilbert's guilt beyond a reasonable doubt. *Stanford,* supra. Therefore, Enumerations Nos. 3 and 6 are without merit.

4. Gilbert contends that the trial court erred in denying his motion to compel the state to produce Ms. Mattei's ex-husband at trial and in allowing certain of his statements into evidence through the testimony of the police officers. The state is not required to call a witness on whose testimony it does not rely in order to make out its case. *Greeson v. State,* 97 Ga. App. 245 (2) (102 SE2d 503) (1958). Accordingly, the state was not required to produce Ms. Mattei's ex-husband at trial even assuming his whereabouts were known by the district attorney. Moreover, since the statements attributed to the ex-husband at the airport were admitted by the trial court solely

---

[1] In support of its contention that Ms. Mattei's testimony was sufficiently corroborated, the state in its brief cites certain testimony given at the hearing on Gilbert's motion to suppress. However, since the sufficiency of corroborating evidence is a matter for the jury to determine and this testimony was not presented to the jury at trial, we will not consider it here. See *Redwing Carriers, Inc. v. Knight,* 143 Ga. App. 668 (9a) (239 SE2d 686) (1977); *Maloy v. Dixon,* 127 Ga. App. 151 (1) (193 SE2d 19) (1972).

for the purpose of explaining the conduct of the police officers and this purpose was expressly related to the jury, this testimony was properly admitted over Gilbert's hearsay objection. *Cobb v. State,* 244 Ga. 344 (8) (260 SE2d 60) (1979). Therefore, Enumerations Nos. 4 and 5 are not meritorious.

5. Gilbert's seventh enumeration cites as error the trial court's allowing a witness to be added to the state's list of witnesses on the day of the trial. However, the transcript discloses that the trial court permitted the witness to be added only after he had been assured that the extent of the witness' testimony was to provide a link in the chain of custody of the seized cocaine. Gilbert's counsel declined the trial court's offer for additional time in order to talk with this witness."Since the purpose of Code Ann. § 27-1403 was satisfied by the trial court's effort to afford the appellant other forms of relief beside excluding the witness' testimony altogether, we hold that there was no error in allowing this witness to testify." *Cates v. State,* 245 Ga. 30, 34 (262 SE2d 796) (1980).

6. In his final enumeration Gilbert contends that the cocaine was improperly admitted into evidence because of a break in the chain of custody thereof. "The burden the state must carry to gain admission of evidence such as this is to show with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution." *Johnson v. State,* 143 Ga. App. 169 (237 SE2d 681) (1977). Our review of the transcript in this case compels the conclusion that the state carried its burden. The alleged inconsistencies in the testimony cited by Gilbert go to the weight of this evidence, not its admissibility. *Meadows v. State,* 135 Ga. App. 758 (219 SE2d 174) (1975).

*Judgment affirmed. Quillian, C. J., and McMurray, P. J., concur.*

DECIDED JULY 16, 1981 —

*William E. Zachary, Jr., Arnold S. Kaye,* for appellant.
*Robert Wilson, District Attorney, Ann Poe Mitchell, Assistant District Attorney,* for appellee.