## 66987. HARRIS v. THE STATE.

BIRDSONG, Judge.

Lawrence Edward Harris was convicted of theft by taking, a felony. This being appellant's fifth conviction for theft by taking, he was sentenced to ten years, eight to serve and two on probation. The evidence shows that in the early morning hours of September 25, 1981, appellant Harris and one Michael Hayes were traveling in appellant's car on Sylvan Road in Atlanta when they allegedly ran out of gas and stopped the car on the warehouse property of Air Cond Atlanta. A police officer cruising by saw the appellant's abandoned car in front of the property. Upon investigation, he saw that a theft was in progress and saw Hayes attempting to run away; and thought he saw another "shadow" moving or fleeing. The police officer captured Hayes alone and it was discovered that three or four large tires had been removed from a van as well as four batteries.

Appellant contended he had no part in the crime but left the vehicle and walked some distance to get gas and when he returned about an hour later, his car was gone and he assumed his friend Hayes had driven it home. He walked to Hayes' house and found no car, and then returned to his own home. The police quickly determined that the vehicle belonged to appellant and, upon Hayes' statement to them that he had been with appellant, arrested appellant the next morning at his home. When the police approached appellant, he immediately said, "My car is in East Point," or "I don't know where my car is." Inside appellant's house, police found all kinds of automotive equipment parts stacked and scattered around in great disarray. Later he confessed to his participation in the crime but at trial stated he had made that admission under pressure. The tools used in the crime were shown to be appellant's, and he admitted they were his. No witnesses testified in his behalf as to alibi or any other exculpation. *Held:*

1. Appellant contends the trial court erred in allowing the police officers to testify that ten to twenty minutes after his arrest the co-actor Hayes told them he had been in the company of appellant Harris, that the car parked in front of the business belonged to appellant, and that appellant lived at a certain address. Appellant contends that as Hayes did not testify, appellant was denied his Sixth and Fourteenth Amendment rights to confrontation, and his motion for mistrial should have been granted.

Pretermitting the question whether the police witnesses' testimony concerning Hayes' statement was impermissible hearsay or merely explained their actions in arresting appellant (see *Momon v. State,* 249 Ga. 865 (294 SE2d 482)), or whether the testimony

violated appellant's right to confrontation, we yet find that the statement offered did not indicate that Hayes was with appellant when the theft was committed, did not accuse appellant of participating in the theft, did not contradict appellant's statement that he left Hayes to go get gas, and was entirely consistent with appellant's own statement that he was in the company of Hayes until he left his car in front of Air Cond. The statement offered was merely cumulative of other undisputed evidence in the case and does not incriminate appellant in the theft. We find that any error in its admission, if it was error, in high probability did not affect the verdict and was harmless beyond a reasonable doubt. *Hamilton v. State,* 239 Ga. 72, 77 (235 SE2d 515); *Cauley v. State,* 130 Ga. App. 278 (203 SE2d 239).

2. The state did not impermissibly place appellant's character into evidence by bringing up a prior conviction over defendant's objection and motion for mistrial. Consistent with evidence concerning the contents of appellant's apartment at his arrest, the prosecutor was apparently attempting to establish appellant's familiarity with automotive parts, as well as the improbability that one person (Hayes) would be able in a short period of time to remove and attempt to steal all the heavy equipment that was removed from Air Cond. Appellant replied: "I can't say how long it would take to actually [remove and carry three truck tires and remove a battery and carry four separate batteries]." The prosecutor queried: "Now, that's not correct, is it, Mr. Harris, because you have experience in carrying batteries in cars before, haven't you?" To which, appellant volunteered: "Well, I was locked up for it, yes." The prosecutor reiterated he was inquiring as to appellant's experience with and propensity for automotive parts, and appellant again volunteered: "I told you I had been locked up for that before. . . . I was doing something that I shouldn't have been doing."

It is clear that the appellant put his own character in issue in volunteering these statements, and opened the door for the prosecutor's cross-examination concerning his previous conviction for theft of a battery (*Holloway v. State,* 164 Ga. App. 589 (298 SE2d 296); *Hudgins v. State,* 153 Ga. App. 603 (266 SE2d 284)), even if the conviction had not been admissible on its own instance as a similar transaction to show identity, bent of mind, scheme, and design. See *State v. Johnson,* 246 Ga. 654 (272 SE2d 321).

3. The value of the goods as exceeding $200 was properly established, and a proper foundation laid therefor, by the Air Cond manager experienced in purchasing and replacing such items as were stolen. *Lee v. State,* 162 Ga. App. 259 (290 SE2d 307).

4. We find no error in the trial court's refusal to charge on alibi,

inasmuch as appellant's testimony concerning his going to get gasoline, did not exclude a finding in time or place that he committed the theft at Air Cond. See *Pearson v. State,* 164 Ga. App. 337 (297 SE2d 98). Nor was the appellant entitled to a charge on "mere presence at the scene of the crime," since by appellant's own testimony he was not present at the scene of the crime but went to get gas instead.

5. We must reverse, however, on grounds that the trial court erred in sending out with the jury the polygraph examiner's official report which merely stated: "Based upon the polygraph chart recordings of subject 1 it is the polygraphist's opinion that physiological responses which are usually indicative of deception WERE NOTED when subject answered relevant questions regarding the issue." The polygraph examiner testified fully and at length concerning his conclusion that appellant's test response indicated he was lying. The defense attorney objected to the admission in evidence of the examiner's "official report," but was overruled.

After the court's charge, during a review of the evidence that would go with the jury, the defense attorney stated: "I had already objected to No. 9 (the polygraph examiner's report) going out, and the Court instructed that No. 9 was going out, so there is no problem there." We do not, as the state would suggest, interpret these remarks as a waiver of objection, but rather as an attempt, however ill phrased, to *preserve* the appellant's objection to the examiner's report. We think the words "there is no problem there" must obviously refer to the fact that objection had earlier been made at the proper time, and could be preserved with no problem, and were not meant to imply that "there is no problem with admission of the report." To conclude otherwise would be nonsensical, since it would be to presume this otherwise conscientious and knowledgeable attorney absurdly thought the judge's earlier ruling was final and conclusive and that he had no further right to object or appeal.

The report that was submitted to the jury was nothing but a written reiteration, on a document bearing the imprimatur of officiality, of the polygraph examiner's opinion that in his belief, appellant was lying. It was not direct evidence, but mere opinion. *State v. Chambers,* 240 Ga. 76, 79 (239 SE2d 324). Its submittal to the jury served no function but of "speaking to the jury more than once." *Shedden v. Stiles,* 121 Ga. 637, 640 (49 SE 719). It provided nothing whatsoever which the jury could examine and evaluate so as to determine the weight and credibility to be given the examiner's opinion: it merely reiterated his opinion. The examiner had already fully given his opinion from the stand, and the Official Report could do nothing for the jury except add weight to that opinion in the jury

room which the defendant was helpless to dislodge. See *Goins v. Glisson,* 163 Ga. App. 290, 293 (292 SE2d 917). It was improper surplusage and calculated to influence the jury. *Shedden,* supra, p. 640. Particularly in view of the largely circumstantial evidence in this case, we cannot say that the jury was unaffected and uninfluenced by the Official Report, and that their verdict of guilty was untainted. In *Royals v. State,* 208 Ga. 78, 81 (65 SE2d 158), our Supreme Court stated: "This court, as previously noted, has specifically ruled that it is error requiring the grant of a new trial to permit the jury to take to the jury room written testimony. [Cits.] Such written testimony may have an unfair advantage over oral testimony by speaking to the jury more than once." See also *Strickland v. State,* 167 Ga. 452 (145 SE 879). We reverse for this reason.

6. Moreover, the trial court compounded the problem by stating to the jury in its charge: "The polygrapher in this case was an expert witness." The charge did immediately caution the jury that ". . . you are not required to accept the testimony of any witness expert or otherwise. Opinion testimony of an expert witness, like that of all witnesses, is to be given only such weight and credit as you think it is properly entitled to receive. In this particular case I charge you that when the results of a polygraph test are admitted in a case that you should consider the test results along with all the other evidence, but the opinion of the examiner as to whether Mr. Harris, the defendant in this case, gave truthful or deceptive responses should only be given whatever weight you think it is properly entitled to receive." This charge was not complete.

We agree especially with the Supreme Court's admonition in *Chambers,* supra at p. 80, that polygraph examiner's opinion "may only be used to indicate whether at the time of the polygraph examination *the person examined believed that he was telling the whole truth.*" (Emphasis supplied.) Without this limitation, (as in this case) the jury is essentially left to conclude that a polygraph test is infallible and conclusive as to the "truth," if only the person evaluating it can be relied upon. Not only is such a conclusion scientifically unproven; it is at best removed from the real truth being sought. The Supreme Court held in *Chambers,* supra, that where polygraph tests are admitted the jury should be instructed that the examiner's opinion of test results "may only be used to indicate whether at the time of the [test] the person examined believed that he was telling the whole truth."

Upon retrial, the trial court should give the appropriate charge as outlined in *Chambers.*

*Judgment reversed. Shulman, C. J., and McMurray, P. J., concur.*

462

*Derek H. Jones,* for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, R. Andrew Weathers, Margaret V. Lines, Assistant District Attorneys,* for appellee.