## 68786. MUNDA v. THE STATE.
### (324 SE2d 799)

CARLEY, Judge.

Appellant was tried before a jury and found guilty of violating OCGA § 40-1-3, in that he had permitted an intoxicated driver to operate an automobile. Appellant appeals from the judgment of conviction and sentence entered on the guilty verdict.

1. An intoximeter test was given to the individual whose operation of an automobile was the basis of the criminal charges against appellant. At appellant's trial, the State sought to introduce into evidence the results of the driver's intoximeter test. Appellant moved to suppress this evidence on the ground of non-compliance with OCGA § 40-6-392 (a) (4), which requires that a motorist be informed at the time of arrest of his right to an independent chemical test. See *Perano v. State*, 250 Ga. 704 (300 SE2d 668) (1983). The trial court ruled that appellant had no standing to object to the admission of the evidence on the ground of an alleged violation of the driver's statutory rights. This ruling is enumerated as error.

The State's position is that the demise of the concept of "automatic standing" is dispositive. See *Gilbert v. State*, 159 Ga. App. 326, 327 (1) (283 SE2d 361) (1981). "[T]he exclusionary rule may be invoked only by those whose rights are infringed by the arrest itself and not by those who are merely aggrieved by the introduction of evidence so obtained. [Cits.]" *Bradshaw v. State*, 162 Ga. App. 750 (1) (293 SE2d 360) (1982). However, the instant case does not involve the exclusion of evidence based upon an alleged violation of the Fourth Amendment. Although OCGA § 40-6-392 creates an exclusionary rule of evidence (*Ensley v. Jordan*, 244 Ga. 435, 437 (260 SE2d 480) (1979)), allegations of non-compliance with OCGA § 40-6-392 "do not involve 'constitutional guarant[e]es against unreasonable search and seizure.' [Cit.]" *State v. Johnston*, 249 Ga. 413, 414 (291 SE2d 543) (1982). The issue is whether appellant has standing to urge the violation of the driver's *statutory* rights as a basis for excluding the intoximeter evidence. Accordingly, resolution of the issue requires consideration of the language of the statute itself, "[a]s interpreted" by the appellate courts. *Ensley v. Jordan*, supra at 437. The concept of "standing" in a constitutional context is not involved, and the cases relied upon by the State therefore are not dispositive.

OCGA § 40-1-3, the basis for appellant's asserted criminal liability, provides: "It is unlawful for the owner or any other person employing or otherwise directing the driver of any vehicle to require or knowingly permit the operation of such vehicle upon a highway in *any manner contrary to law*." (Emphasis supplied.) As noted above, the accusation alleged that appellant had violated this statute by permitting an intoxicated driver to operate a vehicle. Under this accusa-

tion, it is clear that, unless it was shown that the driver of the vehicle was driving under the influence in violation of OCGA § 40-6-391, appellant could not be found guilty of violating OCGA § 40-1-3 in the manner alleged. This is true because it is not "contrary to law" for a driver merely to operate a vehicle after consuming alcohol. It is only unlawful to operate a vehicle while "[u]nder the influence of alcohol" or while "[t]here is 0.12 percent or more by weight of alcohol in [the] blood." OCGA § 40-6-391 (a) (1) and (4).

Thus, under the accusation, appellant's criminal liability was totally dependent upon proof that the driver was in violation of OCGA § 40-6-391. Accordingly, the instant case was a "criminal action . . . arising out of acts alleged to have been committed by any person in violation of Code Section 40-6-391 . . . ." OCGA § 40-6-392 (a). The driver was "any person" whose alleged violation of OCGA § 40-6-391 gave rise to appellant's alleged criminal liability under OCGA § 40-1-3. That being the case, it necessarily follows that the admissibility of the intoximeter results in the instant case would be controlled by the provisions of OCGA § 40-6-392. The statute unequivocally states that when chemical tests are offered for admission in a case within its ambit, its "provisions *shall* apply . . . ." (Emphasis supplied.) OCGA § 40-6-392 (a). " '[I]n its ordinary signification "shall" is a word of command . . . .' [Cit.]" *Cole v. Frostgate Warehouses, Inc.*, 150 Ga. App. 320, 323 (257 SE2d 309) (1979), rev'd on other grounds 244 Ga. 782 (262 SE2d 98) (1979).

We construe OCGA § 40-6-392 as establishing a mandatory requirement applicable in any criminal case "arising out of" an alleged violation of OCGA § 40-6-391 and in which that violation is an essential element of the asserted criminal liability. The mandatory requirement is that when the State seeks to prove the violation by evidence of a chemical test, the State has the burden of demonstrating compliance with the statutory requirements. "[B]reach of the notice requirement of [OCGA § 40-6-392 (a)] renders evidence of the blood test administered by the [S]tate *inadmissible to establish a presumption that the allegedly drunken driver was driving under the influence* . . . ." (Emphasis supplied.) *Ensley v. Jordan,* supra at 437. "We believe this is consistent with the statutory mandate of the General Assembly that the use of such tests in criminal trials shall be subject to the strictest protections . . . ." *State v. Johnston,* 160 Ga. App. 71, 73 (286 SE2d 47) (1981), aff'd 249 Ga. 413, supra.

Appellant's trial was a criminal case within the ambit of OCGA § 40-6-392. The State sought to prove appellant's criminal liability by the introduction of evidence of an intoximeter test. Under the circumstances, appellant had the requisite standing to contest the admissibility of the intoximeter evidence under the controlling statute. The trial court erred in refusing to place any burden on the State to prove

that the evidence it sought to introduce satisfied the requisite statutory mandate for admissibility.

Nothing in *Johnson v. State*, 146 Ga. App. 835, 836 (2) (247 SE2d 513) (1978) or *Chase v. State*, 148 Ga. App. 690 (1) (252 SE2d 194) (1979) is contrary to our instant holding. Neither *Johnson* nor *Chase* was a case "arising out of" an alleged violation of OCGA § 40-6-391 by the individual actually given the chemical test which was introduced into evidence. Accordingly, in neither case was the evidence being offered to prove an essential element of the ultimate criminal liability of either the individual tested or the defendant therein. In contrast, the instant case clearly "arises out of" the driver's alleged violation of OCGA § 40-6-391 and the State sought to introduce the intoximeter results to establish both that violation and appellant's ultimate criminal liability. Under these circumstances, OCGA § 40-6-392 is clearly applicable and the State must prove that its evidence meets the statutory requirements for admissibility. As *Johnson* itself recognized, "[i]n order to utilize the results of a blood-alcohol test *to establish criminal liability against a defendant*," there must be compliance with OCGA § 40-6-392. (Emphasis supplied.) *Johnson v. State*, supra at 836.

We express no opinion as to the merits of appellant's assertion that the evidence of the intoximeter test is inadmissible under the holding of *Perano v. State*, supra. All we hold is that appellant has sufficient standing to contest the admissibility of the evidence on that basis. Appellant's conviction is accordingly reversed and, should he be retried, he shall be entitled to a ruling on the merits of his objection to the intoximeter evidence.

2. In the event appellant is retried and his objection to the admission of the intoximeter evidence is overruled on the merits, another issue raised in the instant appeal is likely to recur. Accordingly, we must address this issue.

Over appellant's objection, the "OPERATING RECORD" of the intoximeter operator was allowed to go out with the jury. Citing *Harris v. State*, 168 Ga. App. 458 (309 SE2d 431) (1983), appellant asserts that this evidence was "written testimony" which the jury should not have been allowed to have in its possession while deliberating.

In *Harris v. State*, supra at 460 (5), the evidence which was sent out with the jury was a "polygraph examiner's official report which merely stated: 'Based upon the polygraph chart recordings of subject 1 it is the polygraphist's opinion that physiological responses which are usually indicative of deception WERE NOTED when subject answered relevant questions regarding the issue.' " This court held that "[t]he report that was submitted to the jury was nothing but a written reiteration, on a document bearing the imprimatur of officiality,

of the polygraph examiner's opinion that in his belief, appellant was lying. It was not direct evidence, but merely opinion . . . . The examiner had already fully given his opinion from the stand, and the Official Report could do nothing for the jury except add weight to that opinion in the jury room which the defendent was helpless to dislodge. [Cit.] It was improper surplusage and calculated to influence the jury. [Cit.]" *Harris v. State*, supra at 460-461.

The contested evidence in the instant case is *not* analogous to a polygraph examiner's conclusory opinion concerning the highly subjective issue of credibility. See *State v. Chambers*, 240 Ga. 76 (239 SE2d 324) (1977). The instant documentary evidence is not conclusory, opinionated or concerned with a subjective issue. The "OPERATING RECORD" consists entirely of objective information concerning the manner in which the test was administered and the final results of that test, expressed as a percentage figure rather than a personal opinion as to intoxication.

As a writing in proof of an act or transaction, the instant report itself was admissible as *direct evidence* of the manner in which a scientific test was conducted and of the results thereby obtained. See OCGA § 24-3-14 (b); *Millwood v. State*, 166 Ga. App. 292, 293 (5) (304 SE2d 103) (1983). The proscription on the jury's possession of "written testimony" does not extend to documents which are themselves relevant and admissible as original documentary evidence in a case. See *Davis v. State*, 172 Ga. App. 193 (322 SE2d 497) (1984). The evidence in the instant case was not surplusage or duplicative of opinion testimony and was not erroneously allowed out with the jury under *Harris v. State*, supra. " '[A]ll of the evidence was proper matter for the jury to have out with it.' [Cit.]" *Davis v. State*, supra at 195.

3. The remaining enumeration of error is not likely to recur at any retrial and will not be addressed.

*Judgment reversed. Birdsong, P. J., concurs. Beasley, J., concurs specially.*

DECIDED DECEMBER 4, 1984.

*Daniel J. Sammons*, for appellant.
*Bruce L. Udolf, District Attorney, Deborah L. Schwind, Assistant District Attorney*, for appellee.

BEASLEY, Judge, concurring specially.

I concur. As to Division 1, the results of the test (even though the manner and method of its application are not challenged) must be excluded because the defendant was deprived of potentially helpful evidence provided as a statutory right principally of the driver to

have a test of his own choosing. The latter test might have contradicted the State's test. The State cannot insulate the result of its test from the comparative attack afforded by law to persons arrested for drunk driving, in a case where it seeks to use that evidence against the person who is charged with allowing the intoxicated person to drive, any more than it can insulate the result in the drunk driver's case. When the State chooses to prove the latter case by evidence obtained pursuant to the implied consent law, it must comply with that law.