### A97A0351. HILLIARD v. THE STATE.
(487 SE2d 81)

SMITH, Judge.

William Horace Hilliard was convicted of the offense of aggravated child molestation, OCGA § 16-6-4 (c).[1] His motion for new trial as amended was denied, and he appeals. Because we conclude that the trial court erroneously allowed an expert witness to testify that she believed the victim was molested, and because that error was not harmless, we reverse.

1. Construed to support the verdict, evidence was presented that in July 1987, the victim, ten years old at the time, went fishing with Hilliard, his uncle by marriage. The victim testified that upon their return to Hilliard's house, while the victim was washing his hands in the bathroom, Hilliard walked up behind him, straddled him, and grabbed him in the crotch. According to the victim, he "jumped back and started to walk out," but Hilliard tackled him to the floor, pulled down his shorts, and "stuck his penis" in him.

The victim's school counselor, who was qualified at trial as an expert, testified that the victim told her in March 1993 that "fondling both under and over his clothes" had occurred and that Hilliard had attempted anal and oral sex although the victim "was able to get away." She testified concerning her observation of the victim's demeanor when he reported the alleged abuse: He blushed, had difficulty using "very specific sexual words," was shaking and crying, and "scrunched up in his chair [and] wrapped his arms around himself." The counselor testified that this type of demeanor usually occurs after a very traumatic, embarrassing event. Over objection, the witness also stated: "I firmly believe that he was molested." Hilliard maintains that this witness impermissibly testified concerning the ultimate issue to be decided by the jury. We agree.

The general rule concerning admissibility of expert testimony as to the ultimate issue is this: "[A]n expert may not testify as to his opinion as to the existence *vel non* of a fact (in this case, whether the child had been abused sexually) unless the inference to be drawn from facts in evidence is beyond the ken of the jurors — that is,

---

[1] Hilliard was also indicted on a charge of child molestation against another victim. He was acquitted of that charge, however.

unless the jurors, for want of specialized knowledge, skill, or experience, are incapable of drawing — from facts in evidence — such an inference for themselves. [Cit.]" *Allison v. State*, 256 Ga. 851, 853 (5) (353 SE2d 805) (1987).

The case law is in stark conflict concerning application of this rule. In *State v. Butler*, 256 Ga. 448 (349 SE2d 684) (1986), the Supreme Court ruled admissible a pediatrician's testimony that the victim had been sexually abused. The court found persuasive the fact that the witness reached this conclusion based on her physical examination of the child in addition to the history related by the child. Further, the court determined that the doctor's conclusion was not one which the jurors would "ordinarily be able to draw for themselves." Id. at 450 (2). See also *Johnson v. State*, 186 Ga. App. 77, 78 (366 SE2d 409) (1988) (same pediatrician's testimony that victim "was probably molested" upheld). Although *Butler* is not mentioned in *Karvonen v. State*, 205 Ga. App. 852, 853 (2) (424 SE2d 47) (1992), we stated in *Karvonen* that a pediatrician's opinion testimony that the victim had been molested was admissible, since the witness did not comment as to whether the appellant was the molester. See also *Strickland v. State*, 212 Ga. App. 170, 173 (4) (441 SE2d 494) (1994) (citing *Karvonen*, witness's diagnosis of "suspected" physical child abuse not ground for mistrial where trial court gave curative instruction).

*Allison v. State*, supra, however, has generated a different view. In *Allison*, testimony concerning the "child sexual abuse syndrome" was presented. One witness, who twice met with the victim, testified that the victim fell within the syndrome and that, in his opinion, she had been sexually abused. Id. at 851-852. The Supreme Court found this evidence inadmissible because the jury had the benefit of "extensive testimony" concerning the child abuse syndrome and testimony that the victim exhibited symptoms consistent with the syndrome. Based on this evidence, the jury "was fully capable of deciding — upon their own — whether the child *in fact* was abused, and, if so, whether [appellant] did it." Id. at 853 (6).

Relying on *Allison*, in *Coxwell v. State*, 195 Ga. App. 751 (395 SE2d 38) (1990) we concluded that a DFACS worker's opinion testimony that the victim had been molested was not admissible. See also *Remine v. State*, 203 Ga. App. 30, 31 (2) (416 SE2d 326) (1992) (expert testimony to effect that child has in fact been abused not permissible). The Supreme Court similarly relied on *Allison* in *Harris v. State*, 261 Ga. 386 (405 SE2d 482) (1991) to hold inadmissible a physician's testimony as to whether the victim was sexually molested. Finally, in *Sims v. State*, 260 Ga. 782, 784 (4) (399 SE2d 924) (1991), the Supreme Court held that a DFACS worker's opinion that the victim was sexually molested was erroneously admitted. The testi-

mony was impermissibly based on the victim's credibility, was not based on the witness's knowledge as an expert, and was not beyond the ken of jurors.[2]

We find the latter view more persuasive here. Notwithstanding *Karvonen* and *Strickland* (neither of which addresses *Butler* or *Allison* and their respective progenies), *Harris*, supra, the most recent Supreme Court pronouncement on the issue, controls. There is nothing to distinguish this case which would allow a different result. *Harris* held that an expert in a child molestation case cannot give his or her opinion as to whether a child has been molested sexually. In that case, the opinion was based on a physical examination of the child. Although the counselor's opinion here was not based on a physical examination of the child's body but rather on the child's behavior and demeanor during her interview of him, both opinions are rooted in observation of facts exhibited by the victim.

*Harris*, a four-to-three opinion, was regarded by the majority as controlled by *Allison*, supra. As noted above, the "established rule" applied in *Allison* is that an expert cannot testify as to an opinion on the existence or nonexistence of a fact, i.e., whether a child has been abused sexually, unless the inference to be drawn from the evidence is beyond the jurors' ken. The question thus is: Did the jury in this case need the counselor's conclusion, based on her observation of the victim's behavior and demeanor during an interview, as to the meaning or significance of that behavior and demeanor as it related to molestation? Or was the jury equipped by this evidence to determine for itself, and without the expert's opinion, whether molestation occurred?

The jury in *Allison* had the benefit of extensive testimony as to the lineaments of the child abuse syndrome, plus testimony that the child exhibited several symptoms consistent with the syndrome. The Supreme Court held that the jury thus was equipped to determine the facts on its own, without the opinion of the expert to guide it. In *Harris*, the jury presumably had the testimony of the physician describing what he observed in the physical examination. (The term "presumably" is used because the opinion does not indicate one way or the other, but such testimony would be necessary for the outcome.) The Supreme Court held that the physician's assessment of those facts — his opinion whether those facts pointed to the fact of molestation — was inadmissible.

---

[2] Although *Sims* does not cite *Allison*, it does cite *Smith v. State*, 259 Ga. 135, 138 (2) (377 SE2d 158) (1989), which relies on *Allison*. Compare *Edmonson v. State*, 212 Ga. App. 449, 450-451 (1) (442 SE2d 300) (1994) and *Hall v. State*, 201 Ga. App. 626, 627 (411 SE2d 777) (1991) (both cases distinguished on basis that there was no attempt made to elicit direct expert opinion on ultimate issue of whether victims were raped or molested).

Here there is no evidence of physical manifestations of molestation which an examining expert could describe to a jury, nor are there indicia of a professionally-recognized syndrome. But there is a description of the child's behavior and demeanor when being interviewed by the experienced counselor who specialized in treating people who have been sexually abused. Hilliard does not enumerate as error the court's allowing the witness to testify as to the specifics of the child's behavior or even her interpretation of it, that what the child did and how he reacted during the interview showed he had experienced a traumatic event which he found very embarrassing and difficult to reveal. He complains only that the counselor was permitted to testify that, based on her observation and analysis of what she observed, the child had been molested.

We cannot say that the issue of whether the victim was molested was beyond the ken of the jurors. "Where (a) the path from evidence to conclusion is not shrouded in the mystery of professional skill or knowledge, and (b) the conclusion determines the ultimate issues of fact in a case, the jury must make the journey from evidence to conclusion without the aid of expert testimony." (Citations and punctuation omitted.) *Remine*, supra, 203 Ga. App. at 30-31 (2).

This was not a case "shrouded in the mystery of professional skill or knowledge." Id. The counselor merely provided the jury with testimony concerning her observations of the victim's demeanor and her opinion that this demeanor was indicative of great trauma. She did not testify to scientific or psychological matters the jury would need expert assistance to understand. The expression of the counselor's opinion was not justified as necessary for the jury's understanding of the evidence so as to be able to form its own conclusion of whether molestation occurred, by inference from evidence of facts and, in this case, the expert's analysis. Allowing the expert to step beyond that and give her opinion as to what event or experience caused the victim's behavior constituted an incursion into the jury's factfinding role and a breach of OCGA § 24-9-67 as the Supreme Court has construed it.

Furthermore, the issue in this case was not simply whether Hilliard committed sodomy upon the victim, but whether the act occurred at all. The victim testified that Hilliard committed sodomy, and Hilliard testified that he did not. The expert's testimony that the victim was molested went far beyond educating the jury as to matters beyond the knowledge of laymen; it impermissibly offered her opinion of the victim's credibility, see *Sims* at 784, and invaded the jury's exclusive province of resolving conflicting evidence. This evidence was inappropriately admitted.

Finally, the testimony was not harmless. In *Stamey v. State*, 194 Ga. App. 305 (390 SE2d 409) (1990), in the context of an ineffective

assistance claim, we concluded that a witness's erroneous statement that she believed the victim to be truthful did not usurp the jury's authority on the issue of witness credibility. Id. at 306 (1) (a). We based our holding on the witness's exhaustive explanation of the criteria she used for determining the victim's credibility. Id. "Given this 'other' testimony, the jury was able to determine for itself the truthfulness and credibility of the victim and could accept or reject the [witness's] opinion on this matter." *Lagana v. State*, 219 Ga. App. 220, 221 (464 SE2d 625) (1995). We therefore concluded that no reasonable probability existed "that but for such error, the verdict would have been different." *Stamey* at 306.[3]

In this case, although we do not address an ineffective assistance claim, the analysis of whether the improper testimony was harmful error is similar: whether it is highly probable that the erroneous evidence did not contribute to the jury's verdict. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976). Here, the evidence of Hilliard's guilt was not overwhelming; it depended heavily on the credibility of the witnesses. Moreover, no "other" testimony was presented, like that in *Stamey*, from which the jury could reach an independent conclusion concerning the victim's credibility. The witness's opinion that the victim had been molested was therefore not superfluous; it usurped the jury's authority. Under these circumstances, it was highly probable that the erroneous testimony contributed to the verdict, and a new trial is required. See *Lagana*, supra; *Flowers v. State*, 220 Ga. App. 814, 815-816 (1) (468 SE2d 199) (1996), overruled in part on other grounds, *Strickland v. State*, 223 Ga. App. 772, 775 (1) (479 SE2d 125) (1996).

2. We address here Hilliard's remaining enumeration because the issue raised by him may arise on retrial.

Hilliard maintains that the trial court's charge erroneously raised the possibility that the jury convicted him of aggravated child molestation in a manner not charged in the indictment. OCGA § 16-6-4 (c), charged by the trial court in its entirety, provides that a person commits the offense of aggravated child molestation by committing an offense of child molestation that physically injures the child or that involves an act of sodomy. The indictment charged Hilliard only with aggravated child molestation by committing sodomy. Hilliard points to evidence that at the time of the attack, Hilliard was much larger in stature than the victim, that Hilliard tackled the victim, and that the victim cried. The victim also testified, when asked how he felt during the attack, that "it hurt. I didn't know what was

---

[3] We note that *Stamey* is not binding precedent: it is a decision by a single three-judge division of this Court with two of the judges concurring specially. See Court of Appeals Rule 33 (a).

going on. I had never experienced anything like that happening to me." Based on this evidence and our holding in *Perguson v. State*, 221 Ga. App. 212 (470 SE2d 909) (1996), Hilliard maintains that the court's charge may have allowed the jury to convict him of aggravated child molestation based upon acts of child molestation that physically injured the victim, which was not charged in the indictment.

We disagree. In *Perguson*, too, the trial court charged OCGA § 16-6-4 (c) in its entirety, although the defendant was not charged with an act of child molestation that physically injured the child. But under the evidence presented in *Perguson*[4] we concluded that the jury could reasonably have concluded that oral sodomy did not occur and still have found defendant guilty of aggravated child molestation because it believed he committed an act of child molestation that injured the victim.

The concerns addressed in *Perguson* are not present here. In *Perguson*, evidence was presented of two different sexual acts — child molestation by committing oral sodomy, and child molestation that physically injured the victim by severely penetrating her hymen. Here, the only inference of injury arising from the evidence presented was that the victim was injured during the act of anal intercourse itself. For the jury to have believed that the victim was injured, it was also required to believe that the sodomy occurred. Because no evidence was presented showing that the victim was injured other than during the act of sodomy, no danger existed that the charge could mislead the jury into believing that it could convict Hilliard of child molestation based on acts not charged in the indictment.

*Judgment reversed. Beasley, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED MAY 15, 1997 — 

 Before Judge Bryant.

*Germano, Kimmey & Cheatwood, John L. Kimmey III, C. David Turk III*, for appellant.

*Lindsay A. Tise, Jr.*, District Attorney, *Kathleen R. Johnson*, Assistant District Attorney, for appellee.

---

[4] Evidence was presented in *Perguson* that oral sodomy had occurred *and* that the victim's hymen was torn in a manner indicating a painful "severe penetrating injury." Id. at 214 (1).