## A97A2083. PUTNAM v. THE STATE.
### (498 SE2d 340)

SMITH, Judge.

Jon Miley Putnam was indicted by a Richmond County grand jury on one count of aggravated child molestation, OCGA § 16-6-4 (c), and one count of child molestation, OCGA § 16-6-4 (a). He was convicted by a jury, his motion for new trial was denied, and he appeals. At Putnam's trial, a social worker testified to the ultimate issue in the case and stated that in her opinion the victim was telling the truth. The social worker read for the jury her own letters that "confirmed" Putnam was "the perpetrator" and that placed his name on the State Child Protective Services Index. This testimony and the letters, which went out with the jury, constitute such plain, obvious, and harmful error under the circumstances that we must reverse, even in the absence of a contemporaneous objection by Putnam's counsel.

1. Putnam's contention that the evidence is insufficient to sustain his conviction is without merit. The victim's testimony alone was sufficient to sustain the convictions. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Hardy v. State*, 210 Ga. App. 811, 813 (4) (437 SE2d 790) (1993).

2. At trial, the State called a "social service specialist" who was employed by the Richmond County Department of Family & Children Services and who conducted the investigation of Putnam. Putnam complains of four specific statements in her testimony as error. First, the social worker testified, "We are not allowed to put a person's name on our Child Protective Services Information System, unless we have interviewed or talked to them in some manner. So what we

did at that point was confirm the sexual abuse, which means we believe it happened, and closed the case, because the perpetrator was not in the home." Second, the State introduced into evidence and the social worker read to the jury her own letter to Putnam on DFACS letterhead that in part stated: "Although the investigation did find evidence that abuse and/or neglect occurred, there were no findings of any abuse . . . on your part." The prosecutor then asked, "But this letter does confirm that there was abuse going on?" To this, the social worker responded, "Yes, it does." Third, the State introduced into evidence and the social worker read to the jury an "outcome letter" on DFACS letterhead, stating that the department found that child abuse "did occur" and "was confirmed" and informing Putnam that his name would be placed on the State Child Protective Services Information System, a list of child abusers. Finally, when asked if she felt she was an impartial investigator, the social worker responded, "I happen to believe what [the victim] told me, though." For several reasons, all these statements by the social worker were improper.

First, the courts of this state have held repeatedly and unequivocally that a witness may not express his or her opinion as to whether a child has been molested. See, e.g., *Harris v. State*, 261 Ga. 386 (405 SE2d 482) (1991); *Sims v. State*, 260 Ga. 782, 784 (399 SE2d 924) (1991); *Allison v. State*, 256 Ga. 851, 853 (5), (6) (353 SE2d 805) (1987); *Hilliard v. State*, 226 Ga. App. 478, 479-481 (1) (487 SE2d 81) (1997); *Remine v. State*, 203 Ga. App. 30, 31 (2) (416 SE2d 326) (1992).

The general rule is well expressed in *Allison*, supra: "[A]n expert may not testify as to his opinion as to the existence *vel non* of a fact (in this case, whether the child had been abused sexually) unless the inference to be drawn from facts in evidence is beyond the ken of the jurors — that is, unless the jurors, for want of specialized knowledge, skill, or experience, are incapable of drawing — from facts in evidence — such an inference for themselves. [Cit.]" *Allison*, supra at 853 (5). The inference to be drawn from the evidence — that the child was the victim of sexual abuse — was not beyond the ken of the jurors. The jurors did not lack the requisite skill, knowledge, or experience to determine based on the victim's testimony and other evidence introduced at trial whether she was molested.

Indeed, "[w]here (a) the path from evidence to conclusion is not shrouded in the mystery of professional skill or knowledge, and (b) the conclusion determines the ultimate issue of fact in a case, the jury must make the journey from evidence to conclusion without the aid of expert testimony." (Citations and punctuation omitted.) *Remine*, supra at 30-31 (2). While an expert may testify, for example, that the alleged victim in a child molestation case exhibits recognized

behavior consistent with that of a sexually abused child ("child abuse accommodation syndrome"), the expert may not present his or her opinion that the child in fact has been abused. Id. at 31. Observations of a victim's demeanor and the opinion of a qualified expert that the demeanor was "indicative of great trauma" would be permissible as part of an expert's analysis of observed facts in the light of professional training, but testimony that "I firmly believe that [the victim] was molested" is nevertheless inadmissible because it does not go to "scientific or psychological matters the jury would need expert assistance to understand." *Hilliard*, supra at 478, 481. Although a physician may testify to the results of a physical examination, the conclusion that the victim was sexually molested is inadmissible. *Harris*, supra at 387.

Here, the social worker did not offer evidence that was even remotely based upon professional knowledge or skill. Nor did she testify to any professional observations that formed the basis for her conclusions. She simply expressed her unsupported opinion and the opinion of DFACS that the alleged victim was in fact abused and that Putnam was the "perpetrator." This conclusion was a matter strictly within the province of the jury and the admission of her testimony was error.

Second, it is well established that "[i]n no circumstance may a witness'[s] credibility be bolstered by the opinion of another, even an expert, as to whether the witness is telling the truth." (Punctuation omitted.) *Roberson v. State*, 214 Ga. App. 208, 210 (4) (447 SE2d 640) (1994). The credibility of a witness is a matter exclusively for determination by the jury. OCGA § 24-9-80. Testimony that another witness believes the victim impermissibly bolsters the credibility of the victim. *Lagana v. State*, 219 Ga. App. 220, 221 (464 SE2d 625) (1995). Here, not only did the social worker state an impermissible conclusion that the victim was abused by Putnam, she testified that she believed the victim — the State's key witness. This testimony was not supported by expert opinion or her personal observation. Instead, it was wholly conclusory, gave an impermissible and unsupported opinion that another witness was credible, and should not have been allowed. *Cline v. State*, 224 Ga. App. 235, 237 (2) (480 SE2d 269) (1997).

The error here was compounded because the social worker repeatedly characterized her opinion as the official opinion of DFACS or others at that agency, speaking through her. She gave the majority of her testimony in the "editorial 'we.'" She stated, for example, that *"we* believe it happened," *"we* cannot say he did anything without talking to him," and *"we* send them a letter" (placing them on a list of child abusers). Moreover, the State introduced into evidence the social worker's own letters on DFACS stationery. The social worker

then read those letters to the jury, stating as the official conclusion of DFACS that child abuse "was confirmed" and "did happen," that Putnam was the "perpetrator," and that he had been placed on an official list of child abusers. This, in effect, bolstered her own testimony by giving her unsupported conclusions the imprimatur of approval from a state agency. This was improper. In *Harris v. State*, 168 Ga. App. 458 (309 SE2d 431) (1983), this Court found it error to allow a polygraph examiner's "official report" to be sent out with the jury. We held that "[t]he report that was submitted to the jury was nothing but a written reiteration, on a document bearing the imprimatur of officiality, of the polygraph examiner's opinion that in his belief, appellant was lying. It was not direct evidence, but merely opinion. . . . The examiner had already fully given his opinion from the stand, and the Official Report could do nothing for the jury except add weight to that opinion in the jury room which the defendant was helpless to dislodge. [Cit.] It was improper surplusage and calculated to influence the jury. [Cit.]" Id. at 460-461 (5).

3. Having determined that the testimony complained of was error, we must decide whether its admission amounts to harmful error despite the failure of Putnam's attorney to object at trial. "In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." (Citations and punctuation omitted.) *Almond v. State*, 180 Ga. App. 475, 480 (349 SE2d 482) (1986) (on motion for reconsideration). In *Mindock v. State*, 187 Ga. App. 508 (370 SE2d 670) (1988), appellant made an ambiguous and nonspecific objection at trial to an absent fellow-offender's confession. This Court, citing *Almond*, held that the evidence was "so prejudicial and so repugnant to the idea of a fair trial that to admit such evidence would be error even in the absence of an objection. [Cit.]" Id. at 509. See also *Drug Emporium v. Peaks*, 227 Ga. App. 121, 125 (488 SE2d 500) (1997) (rule applied in civil case to erroneous charge of superseded statute); *Boatwright v. State*, 193 Ga. App. 141, 142-143 (2) (387 SE2d 386) (1989) (appellant failed to object to evidence of guilty plea; codefendant objected and won reversal); *Kearney v. State*, 184 Ga. App. 64 (360 SE2d 633) (1987) (*Almond* rule applied on appeal although appellant did not assert general grounds when State failed to prove essential element of case).

Here, the circumstances mandate the conclusion that this testimony was harmful and reversible error, even in the absence of an objection. As discussed in Division 2, above, the error in this case was obvious and violated well-established rules forbidding testimony that goes to the ultimate issue or that bolsters the credibility of another

witness. The evidence in the case was not overwhelming, consisting as it did primarily of the victim's accusations, as testified to by the victim or communicated to other witnesses, and Putnam's denials. The child was never examined by a physician, and no medical or psychological testimony was presented by the State.

Finally, we find troubling the combination of circumstances surrounding these allegations. No report was made until at least six months after the incidents allegedly occurred and several months after the victim allegedly told her mother. The allegations were raised by the victim's mother in the context of an acrimonious divorce and after the mother took her children to a religious family conference at which they were exhorted about "telling the truth" to their parents.[1] These circumstances are indeed exceptional, and to ignore the obvious underlying error would "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Almond*, supra.

*Judgment reversed. McMurray, P. J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur in the judgment but not in all that is written. I find it necessary to explain.

First, we are in effect shortcutting the normal process by using the "plain error" rule which the United States Supreme Court created in *United States v. Atkinson*, 297 U. S. 157, 160 (56 SC 391, 80 LE 555) (1936), to address certain types of issues in exceptional circumstances, despite the absence of exception being taken in the trial court.

I do not find the application of this rule in any prior Georgia case where inadmissible opinion is given by a witness on an ultimate issue to be decided by the factfinder. Thus, this case would set a new precedent but for the fact that the opinion is non-precedential. Court of Appeals Rule 33 (a). Were it to become precedent, it would apply to other such cases, at least where the witness' opinion is that the act of victimization did occur and that the witness believed the victim's description of it and identification of the perpetrator, as in this case.

Putnam did not object to admission of the evidence which this Court deems rendered the trial fundamentally unfair. We are reaching the issue despite the lack of request for the trial court to rule. Normally, the affected party would by silence waive the objection and the appellate court would not address it, for the reasons given by the Supreme Court in *Atkinson*, supra. The well-settled rule of procedure

---

[1] We note that after this conference the victim's brother also confessed to his mother that he was sexually involved with the victim. Putnam contended that the siblings made false accusations against him to divert attention from their illicit relationship.

was repeated and applied in, for example, *Kitchens v. State*, 198 Ga. App. 284, 286 (5) (401 SE2d 552) (1991): "An enumeration of error complaining of admission of evidence or of documents going out with the jury presents nothing for decision by this court where no objection was made at the trial." (Citations and punctuation omitted.) The question was not even raised in the motion for new trial, which was argued by appellate counsel without amendment to the motion filed by trial counsel on the general grounds alone. Compare *Stidem v. State*, 246 Ga. 637, 639 (3) (272 SE2d 338) (1980): even where a concededly reversible error is made (allowing defendant's written statement to the police and a transcript of his preliminary hearing testimony to go out with the jury), the judgment was affirmed because no timely objection was made.

Thus, in this instance, we take the position in effect that if we do not address the issue on this direct appeal, there likely would be a habeas corpus brought on the ground of ineffective assistance of counsel. Failure to object would, given the ruling on the substantive issue here, constitute deficient performance so prejudicial to the defense that a reasonable probability exists that the trial result otherwise would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Deciding the question on this direct appeal avoids that process and the resultant delay of a new trial.

Although I agree that the repeated instances of inadmissible opinion evidence which invaded the province of the jury resulted in an unfair trial, I do not find the law as clear-cut as the majority presents it. In *State v. Butler*, 256 Ga. 448 (349 SE2d 684) (1986), a four-to-three decision, the Supreme Court held that it was not error to allow the witness to testify that in her opinion the child had been molested, "which was an ultimate issue to be decided by the jury." The court's rationale was two-fold: 1) that the witness had laid a foundation of professional expertise and fact-gathering upon which to base the opinion; 2) the opinion was a factual conclusion " 'which jurors would not ordinarily be able to draw for themselves.' " Id. at 450. The majority's view was that the opinion was not merely an opinion as to the child's credibility but rather was a medical opinion.

A few months later the Supreme Court decided *Allison v. State*, 256 Ga. 851 (353 SE2d 805) (1987). In it the court discussed the difference between an ultimate issue and an ultimate fact and restated the rule that "an expert may not testify as to his opinion as to the existence *vel non* of a fact (in this [*Allison*] case whether the child had been abused sexually) unless the inference to be drawn from facts in evidence is beyond the ken of the jurors — that is, unless the jurors, for want of specialized knowledge, skill, or experience, are incapable of drawing — from facts in evidence — such an inference

for themselves." Id. at 853 (5).

The Supreme Court applied the rule in *Smith v. State*, 259 Ga. 135, 138 (2) (377 SE2d 158) (1989), a child rape and molestation case, and held that it was reversible error to allow the witness, who had been qualified as a child-abuse expert, to testify over objection that in her opinion, the victim told the truth about the matter, is telling the truth, and will not go back on it. The basis for the ruling was that the credibility of the victim was not beyond the ken of the jurors. One justice made a distinction between this evidence, which he agreed was inadmissible because it related to the truthfulness of this particular victim, and expert opinion regarding "the general propensity for victims of child abuse to be truthful about the abuse." Id. at 138-139.

In 1990 this Court reversed a conviction of child molestation in *Coxwell v. State*, 195 Ga. App. 751, 752 (3) (395 SE2d 38) (1990), because the trial court allowed a DFACS social worker who had related her experience and training with respect to child abuse to state her opinion on "the ultimate issue of whether the child had been sexually molested." This Court pointed out, not for the first time, that there is conflicting authority as to whether such expert testimony is admissible, cited several cases, and applied what it understood as the current law.

The next year all the justices concurred in *Sims v. State*, 260 Ga. 782, 784 (4) (399 SE2d 924) (1991), which held that it was reversible error to allow a DFACS caseworker to express her opinion that the child had been molested. The reason was that the opinion was not based on expertise in the field of child sexual abuse, so as to be outside the jury's ken. Thus it was inadmissible because it lacked a proper foundation for expert opinion and constituted nothing more than the witness' opinion about an ultimate fact which the jury could itself decide without her opinion.]

Our decision in *Harris v. State*, 198 Ga. App. 503 (402 SE2d 62) (1991), was reversed by the Supreme Court in *Harris v. State*, 261 Ga. 386 (405 SE2d 482) (1991). We understood the holding in *Allison*, supra, to allow the physician to state his expert opinion, based on the foundation of his physical examination of the victim, that the child had been sexually molested. This Court reasoned that the jury was not capable of deciding this issue itself. The Supreme Court held, in effect and without explanation, that this Court misinterpreted *Allison*. Three justices dissented, pointing out what they regarded as a fine line, "a semantical distinction" which the Court was making, between what was admissible and what was not. The author of the Court of Appeals decision is now a justice on the Supreme Court.

We soon had call to address the issue again. In *Remine v. State*, 203 Ga. App. 30 (2) (416 SE2d 326) (1992), the Court applied *Allison* without citing *Harris* and held that the qualified expert was not per-

mitted to testify, over objection, that "in his opinion the victim had suffered 'extensive pain and emotional abuse.' " The reason given was that the jury did not need it, as it had extensive evidence from which it could draw its own conclusion regarding this fact. The Court distinguished, without explanation, instances where the expert offers his opinion that the victim has exhibited behavioral characteristics consistent with those of a sexually abused child.

These cases demonstrate that the law on the subject is still evolving. In sum, it appears that an expert's opinion with respect to whether the child in fact suffered the act which defendant is charged with committing, i.e., an ultimate fact, is inadmissible where 1) a proper foundation is not laid for reaching the opinion, that is, an adequate base of expertise in the field and knowledge of this particular victim is absent, and 2) the fact is determinable by the jury without the opinion of the expert, that is, the evidence is sufficient for the jury to reach its own conclusion directly. When that evidence is the same as that upon which the expert bases his or her opinion, and is not the type of evidence that needs expert deciphering in order for its meaning to be understood, then the expert's opinion is inadmissible for fear that that jury will substitute it for its own.

2. I do not join in the majority's challenge to the credibility of witnesses. It is a matter for the factfinder, and we have ruled that the evidence of guilt was sufficient.

DECIDED MARCH 13, 1998 ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Peter D. Johnson*, for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.