### 71485. LOVELL v. THE STATE.
(343 SE2d 414)

BEASLEY, Judge.

Lovell was convicted and sentenced for the offense of alcohol-influenced driving (OCGA § 40-6-391). He had also been charged with operating a motor vehicle without insurance (OCGA § 33-34-12), and driving after his license had been revoked (OCGA § 40-5-121). The jury found him not guilty of the former, and the court directed a verdict of not guilty on the latter because there was no evidence that defendant had received notice from the Georgia Department of Public Safety of the revocation.

1. Lovell asserts that his arrest was without probable cause and thus illegal, so that any evidence obtained thereafter was inadmissible. The only authority cited is a Georgia case which quotes a United States Supreme Court standard so we deal only with a federal consti-

tutional claim.[1] See, e.g., *Mitchell v. State*, 173 Ga. App. 560 (1) (327 SE2d 537) (1985).

"The trial court's finding on questions of fact and credibility at a suppression hearing must be accepted unless clearly erroneous. *Woodruff v. State*, 233 Ga. 840, 844 (213 SE2d 689)." *Marks v. State*, 174 Ga. App. 711, 715 (1) (331 SE2d 900) (1985).

The arresting officer was on routine patrol about 5:00 p.m. when he noticed defendant driving out of a local park. He knew defendant by name, having seen him at the precinct station, and he knew that defendant did not have a driver's license. At that point he had probable cause to arrest defendant, as it is a misdemeanor to drive a motor vehicle without a license. (OCGA §§ 40-5-20; 40-5-120 (7)). This knowledge was shared by defendant, who said when the officer eventually stopped him and asked to see his driver's license and proof of insurance, "Ron you know I don't have any license . . . I don't have insurance." The officer then placed him under arrest and asked him to exit the car, which he did after the second request. Based on additional observations by the police officer and his prior knowledge of defendant, he added the charge of driving under the influence when he repeated what Lovell was under arrest for. When he had first seen him, which was at fairly close range, he noticed that he was unusually flushed, was driving extremely slowly, and when he followed him, Lovell drove on the shoulder of the road.

The validity of the arrest under the United States Constitution depends "upon whether, at the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." *Beck v. Ohio*, 379 U. S. 89, 91 (85 SC 223, 13 LE2d 142) (1964). Applied in *Sanders v. State*, 235 Ga. 425, 439-440 (219 SE2d 768) (1975). See also *Malpass v. State*, 173 Ga. App. 690, 691 (2) (327 SE2d 753) (1985).

Here, not only did the officer have current knowledge from observing defendant drive, but this was coupled with prior knowledge that his driving privilege had been revoked. It is irrelevant that defendant was later acquitted of this charge and of the other charge for which he was originally arrested. Defendant's statement that he had no insurance, when the officer asked to see it as he had a right to do, see OCGA § 33-34-10 (f) (2), did not negate the probable cause. It is measured by current knowledge, i.e., at the moment the arrest is

---

[1] The Georgia case cited is *Vaughn v. State*, 247 Ga. 136 (274 SE2d 479) (1981), but the issue of probable cause to arrest was not reached there.

made and not hindsight. See *Bodiford v. State*, 169 Ga. App. 760, 761 (315 SE2d 274) (1984).

Although drunk driving was only added to the original cause for arrest, there was probable cause to arrest on this ground also. The officer's prior personal knowledge, his observation of defendant's physical appearance and manner of driving, the circumstances of time and place, all contributed to constitute his belief that defendant was driving under the influence, and this was immediately attested to by defendant's plea for a break because he had had a hard day and so had a few drinks. See, e.g., *Malpass v. State*, supra at 691 (2).

2. Appellant maintains that the police failed to provide a requested independent urine test in compliance with OCGA § 40-6-392 (a) (3) so that the court erred in not suppressing the results of the intoximeter test.

At the motion hearing, the arresting officer testified that he read the implied consent rights to Lovell (see OCGA §§ 40-5-55; 40-6-392) from a standard implied consent warning card, that he took Lovell to the police station partially for the purpose of administering a breathalizer test to him and that Lovell took that test and then told the officer he wanted to go to the hospital for an independent test. The officer further testified that Lovell, at the point of requesting the additional independent test did not specify a urine test. The officer then took Lovell to the Northeast Georgia Medical Center as Lovell had asked to go to that facility for a test. An employee in the hospital's laboratory told Lovell that the hospital did not administer a urine test for alcohol content, but that a blood test was available. The officer further testified that Lovell did not ask to go to another facility or still insist on a urine test. The officer did not know whether Lanier Park Hospital in Gainesville could provide a urine test, and he did not check with his supervisors to see whether he would be authorized to go to one of the other hospitals in the area. Lovell was then taken back to the police station.

Lovell, on the other hand, testified that he advised the officer that he wanted to take an independent urine test and that after he learned it was not available at Northeast Georgia Medical Center, he asked the officer to be taken to Lanier Park Hospital; he conceded, however, that he [Lovell] did not know whether the urine test was available there.

There is no dispute that the officer advised Lovell of his right to independent testing nor that Lovell initially requested to go to Northeast Georgia Medical Center for an independent test and that he was taken there. There is conflict in the testimony about when the officer first knew that Lovell specifically wanted a urine test and about whether or not Lovell requested to go for testing to a second hospital. "Where there is a conflict over whether a defendant was advised of

his right to an additional test, resolution of the question of credibility is for the trial court." *State v. Dull*, 176 Ga. App. 152, 153 (335 SE2d 605) (1985). Questions of credibility arising out of conflict in testimony regarding the circumstances of pursuing the additional testing would likewise be for resolution by the court.

Even assuming the circumstances as related by defendant, there would be no requirement to suppress the intoximeter results here. The "law gives one accused of driving under the influence of alcoholic beverages the right to have a chemical analysis of his blood and urine by a qualified person of his own choosing," and "there is coupled with the right granted to the accused a corresponding duty on the part of law enforcement officers not to deny him that right." *Puett v. State*, 147 Ga. App. 300 (248 SE2d 560) (1978). However, before the duty of the police arises to transport a defendant to the location of the independent test, and before there is a breach of that duty which may give reason to suppress the evidence of the state administered test, the defendant must first show that he had made arrangements with a qualified person of his own choosing, that the test would be made if he came to the hospital, that he so informed the personnel at the jail where he was under arrest, and that those holding him either refused or failed to take him to the hospital for that purpose. *Harper v. State*, 164 Ga. App. 230, 231 (1) (296 SE2d 782) (1982).

There is no evidence that Lovell made any arrangements to have independent testing done at the first medical facility. Therefore the officer had no duty to take him there and the officer's act was a gratuitous one. Nor is there any evidence that upon discovering that a urine test was unavailable at Northeast Georgia Medical Center, Lovell attempted to make arrangements for the test at Lanier Park Hospital; in fact, as late as the time of hearing on the motion to suppress, Lovell had no knowledge that the desired urine test was even available at the second facility. Under these circumstances, the officer had no obligation to transport the defendant to Lanier Park Hospital. "Where a defendant makes no arrangements to secure an independent test, the mere fact that it was not made 'fails to disclose any reason to suppress the evidence merely because the defendant was unable to obtain a test of his own choosing.' [Cit.]" Id. at 231 (1).

3. The remaining question is whether two jurors should have been stricken for cause so that defendant did not have to use his peremptory strikes against them. He claims that his right to "a fair and speedy trial" under the Sixth Amendment to the Constitution of the United States was violated in this respect, and cites *Logue v. State*, 155 Ga. App. 476 (271 SE2d 42) (1980). No doubt he has reference to the constitutional provision guaranteeing an impartial jury. He does not ask us to consider whether or not the circumstances constituted a violation of the Constitution of Georgia which provides for

"an impartial jury." Art. I, Sec. I, Par. XI.[2] However, the single case he cites is a state case, citing exclusively other state cases, and we will apply the principles set out therein.[3] In so doing, we do not find the quotation contained in appellant's brief, although the sense of it is stated in the opinion: " 'A big part of the battle is the selection of the jury, and an impartial jury is the cornerstone of the fairness of trial by jury.' *Melson v. Dickson*, 63 Ga. 682, 686 (1879). 'Jurors should come to the consideration of a case . . . free from even a suspicion of prejudgment . . . [of] the issue to be tried . . . as to the parties, the subject matter, or the credibility of the witnesses.' *Edwards v. Griner*, 42 Ga. App. 282 (1) (155 SE 789) (1930); *Jones v. Cloud*, 119 Ga. App. 697 (5) (168 SE2d 598) (1969). . . . 'When a defendant in a felony trial has to exhaust his peremptory strikes to excuse a juror who should have been excused for cause the error is harmful.' *Bradham v. State*, 243 Ga. 638, 639 (256 SE2d 331) (1979)." *Logue*, supra at 477.

In that case the conviction was reversed because the prospective juror indicated an interest which was not dispelled by efforts to rehabilitate her as to her ability to hear the case fairly and impartially, and her inclination toward the prosecution remained or was at least in doubt.

a) In the instant case, Ms. Parks had heard about a case in which defendant was charged with DUI, but she was not sure it was the same one and actually had heard about defendant's involvement in about three cases. When asked whether what she had heard would affect her ability to be an impartial juror, she said no, that she thought she could be unbiased, render a decision based on the facts of this particular case, and eliminate from her consideration what she had heard before, even though she may have expressed an opinion about Mr. Lovell to another person previously about the cases she had heard of. In response to the court's comprehensive question on the subject, she stated that she believed she would base her verdict on the facts but if there were a question one way or the other, if she had a doubt, her opinion might have influence. Based on her repeated assurance that she could be an impartial juror, the court declined to strike her for cause.

" 'When a prospective juror has formed an opinion based on hearsay (as opposed to being based on his having seen the crime committed or having heard the testimony under oath), to disqualify such individual as a juror on the ground that he has formed an opinion on

---

[2] Though we must preserve the distinction, appellant makes no argument based separately on our state constitution. *Davenport v. State*, 172 Ga. App. 848, 850 (2) (324 SE2d 201) (1984).

[3] They do not clearly state whether they are applying the federal standard, the state standard, or both.

the guilt or innocence of a defendant, the opinion must be so fixed and definite that it would not be changed by the evidence or charge of the court upon the trial of the case.' [Cits.]" *Waters v. State*, 248 Ga. 355, 362 (2) (283 SE2d 238) (1981).

Parks' statements showed that any hearsay she had heard and opinions she had formed regarding Lovell and this case would not prevent her from being an impartial juror based on the evidence presented in court and the judge's charge. Her comment about her prior opinion influencing her in the event of doubt would be ameliorated by the court's charge on what to do in the event the juror had a reasonable doubt. Since she agreed she would apply the court's charge on the law, it was clear that any preconceived bias would be set aside and a doubt resolved in favor of acquittal rather than in favor of a prior opinion. Thus the court did not err in refusing to grant defendant's challenge for cause.

b) Ms. Simmons had heard Lovell discussed at the beauty shop and in the halls of the courthouse by friends of hers, to the effect he was an alcoholic. What was discussed at the beauty shop was a newspaper article. Based on what she had heard, she thought he needed help if he was in fact an alcoholic. She had not related this opinion to anyone, and would not be influenced one way or the other by what she had heard. She stressed that she had not even read the newspaper article. She had experience in her family with an alcoholic who had a destructive effect on her life and hurt everyone concerned with him. In response to counsel's question, she also indicated she expected more of a person connected with the law than she expected of an ordinary layperson; she knew defendant was a lawyer. As to all of these things, she repeatedly denied they would influence her, and she assured the examiner that she would weigh the evidence and base her verdict on that alone and not on her prior opinions.

Thus, in this instance also, the prior notions of the prospective juror would have been set aside by that juror, who understood what it meant to be an impartial juror and clearly indicated she could serve in that capacity. The court, which has some discretion in the matter, did not err. See *Taylor v. State*, 243 Ga. 222, 224 (2) (253 SE2d 191) (1979). "Challenges for favor are based on admissions of the juror or facts and circumstances raising a suspicion that the juror is actually biased for or against one of the parties." *Jordan v. State*, 247 Ga. 328, 338 (6) (276 SE2d 224) (1981). In Georgia, the test for disqualification for favor is set out in OCGA § 15-12-164 (formerly Code Ann. § 59-806), as explained in *Jordan*, supra at 339. The statutory questions had been asked and the jurors' responses to them and to the individual voir dire raised for defendant no right, as claimed, to have them stricken for cause because they were not disqualified for favor.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

372

*G. Donald Pulliam,* for appellant.
*Jerry Rylee, Solicitor,* for appellee.