73214. THE STATE v. HUGHES.
(352 SE2d 643)

POPE, Judge.

Appellee was arrested for and subsequently charged with driving under the influence. The record shows that at the time of his arrest appellee was read his implied consent rights pursuant to OCGA §§ 40-5-55 and 40-6-392 and that appellee then consented to take the intoximeter (breathalyzer) test. Appellee subsequently filed a motion to suppress the results of that test, alleging that he had not been afforded his right to an additional test performed by a person of his

own choosing as provided by OCGA § 40-6-392 (a) (3) and as he had been advised at the time of his arrest. At the hearing on appellee's motion to suppress, the arresting officer, Sgt. Davis, testified that appellee did not request a blood test until after he had been placed in his jail cell, and that he took appellee to Shallowford Hospital to have the test performed at that time. Sgt. Davis also testified that appellee did not request to be taken to a particular hospital and that even if appellee had made such a request, he would have taken appellee to Shallowford because of an unwritten departmental policy to take the person requesting an independent test to the nearest hospital. Sgt. Davis also testified that at no time did appellee inform him that he had made arrangements to have the test performed at Northside Hospital.

In direct contradiction to Sgt. Davis' testimony, appellee testified that he requested a blood test at the time of his arrest and that he specifically requested that the test be performed at Northside Hospital and that he informed Sgt. Davis that he had the money to pay for the test. Appellee stated that once he was taken to the police station, he again made his request to Sgt. Davis and again requested that the test be performed at Northside. Appellee also testified that he made a similar request to another police officer while he was being "processed" and then again after he was placed in a jail cell, at which point Sgt. Davis transported him to Shallowford. Appellee testified that on the way to Shallowford he again asked Sgt. Davis to take him to Northside. It was appellee's testimony that he wanted to have the test performed at Northside because he worked across the street at Scottish Rite Children's Hospital and was familiar with Northside's procedure for blood testing because Scottish Rite had all its blood work performed there. Appellee also testified that he knew Shallowford charged $75 for a blood alcohol test and Northside charged $36.50 for the same test. Appellee stated that he submitted to and paid for the test at Shallowford even though it was not the one he had requested because it "was my only choice. I wanted the blood test. There was no elsewhere [sic] to go." Appellee testified that he was given only one telephone call and that he did not use that call to arrange for the test. Appellee explained that "[y]ou don't need to make reservations for a blood test."

The trial court granted appellee's motion to suppress and found as a matter of fact and law that appellee had been denied his right to an independent test by a person of his own choosing. The court also found that appellee had made timely and repeated requests to be taken to Northside Hospital, that appellee was informed that the City of Doraville had a policy that all independent tests would be done at Shallowford Hospital and that Sgt. Davis would not have transported appellee anywhere else. The trial court also found that appellee's re-

quest to be transported to Northside was not unreasonable because the difference in distance between the two hospitals was less than five miles.[1] The State filed this timely appeal from the trial court's order. *Held*:

OCGA § 40-6-392 (a) (3) gives one accused of driving under the influence the right to "have a . . . qualified person *of his own choosing* administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer." (Emphasis supplied.) "There can be no question that by judicial interpretation of [OCGA § 40-6-392] the results of an intoximeter (breath) test which is taken in violation of the protections afforded by [that section] may not be used in evidence against the defendant." *State v. Johnston*, 160 Ga. App. 71, 73 (286 SE2d 47) (1981), aff'd on other grounds, 249 Ga. 413 (291 SE2d 543) (1982). See also *Munda v. State*, 172 Ga. App. 857 (1) (324 SE2d 799) (1984). The State argues, however, that the trial court's order granting appellee's motion to suppress was in error because appellee was accorded his rights under OCGA § 40-6-392 (a), or that at a minimum, substantial compliance has been shown with that section. The State also contends that the trial court erred in granting appellee's motion because appellee was not harmed by the arresting officer's failure to take him to Northside since appellee did in fact receive an "independent" test. We find no merit in these assertions.

The State argues that Sgt. Davis had no obligation to take appellee to Northside because appellee failed to make the proper arrangements to have the test performed there, as required by law. In *Harper v. State*, 164 Ga. App. 230, 231 (296 SE2d 782) (1982), this court stated that "[b]efore the duty of the police arises to transport a defendant to the location of the test, he must first show that he had made arrangements with a qualified person of his own choosing, that the test would be made if he came to the hospital, that he so informed the personnel at the jail where he was under arrest, and that those holding him then 'either refused or in any event failed to take him to the hospital for that purpose.' *Puett v. State*, 147 Ga. App. 300 (248 SE2d 560) [(1978)]." In *Harper* the defendant "was told he could call his own doctor and have a test set up or 'whatever he wanted to do,' given a telephone book and allowed to place at least two phone calls." Id. at 230. Appellee in the case sub judice was never instructed to make arrangements for the test, and clearly such instructions would not be forthcoming from any of the personnel at the Doraville Police Department since there was an unwritten policy to

---

[1] On appeal, we must accept the trial court's findings on questions of fact and issues of credibility unless such findings are clearly erroneous. *Lovell v. State*, 178 Ga. App. 366 (2) (343 SE2d 414) (1986).

transport anyone requesting an additional test to Shallowford. More importantly, we agree with the trial court that "[w]hether or not the defendant made arrangements with another hospital [under the facts of the case sub judice] would have been irrelevant. It would have been physically impossible for him to go to Northside Hospital while he was in the custody of Sergeant Davis as [he] would only transport the defendant to Shallowford Hospital." The record also discloses that it may have been unnecessary for defendant to make arrangements at Northside because appellee was familiar with the blood testing procedure there. Appellee stated that "you don't need to make reservations for a blood test," and that he knew that Northside charges approximately one-half of what Shallowford charges for the same procedure. The record also discloses that appellee was allowed only one telephone call. These facts clearly distinguish this case from both *Harper*, where defendant was specifically told to arrange for the test and was given the means to do so, and those cases where defendant was obviously ignorant of the procedure at the requested facility in that the defendant asked to be taken to a hospital that did not perform the requested test. Cf. *Lovell v. State*, 178 Ga. App. 366 (2), supra.

The State also argues that there has been substantial compliance with the statutory requirements because appellee did in fact receive an additional test. For this same reason, the State argues that appellee failed to show how he has been harmed by the failure of the arresting officer to take him to Northside. To accept the State's arguments, we must first find that the "of his own choosing" language in OCGA § 40-6-392 (a) (3) is superfluous. This we refuse to do. We do not believe substantial compliance means that it is permissible to ignore completely the "particulars" of the laws of this state or that it is permissible to ignore statutory requirements as long as no harm is shown. "The mandatory requirement is that when the State seeks to prove the violation by evidence of a chemical test, the State has the burden of demonstrating compliance with the statutory requirements." *Munda v. State*, supra at 858. Under the facts of the case sub judice, we do not believe that the State has met this burden. In so finding, " '[w]e believe [that our holding] is consistent with the statutory mandate of the General Assembly that the use of such tests in criminal trials shall be subject to the strictest protections. . . .' [Cit.]." Id. Appellee was told he had a right to have an independent test performed *by a person of his own choosing*. This choice was at best illusory. "[O]f what value is [the] right if the accused is in custody of law enforcement officials who either refuse or fail to allow him to exercise the right? We hold that under [the] circumstances [of this case] there [was] coupled with the right granted to the accused a corresponding duty on the part of law enforcement officers not to deny him that right. This the officers did by not taking him by [a nearby]

local hospital [of his own choosing] for the test he wanted and was reasonably entitled to have." *Puett v. State*, supra at 300.

*Judgment affirmed. McMurray, P. J., and Carley, J., concur.*

DECIDED JANUARY 6, 1987.

*Ralph T. Bowden, Solicitor, Gregory A. Adams, Elliott A. Shoenthal, Assistant Solicitors*, for appellant.

*Joseph P. Hancock*, for appellee.