### 75973. DOZIER v. THE STATE.
(369 SE2d 328)

BEASLEY, Judge.

Defendant appeals his conviction of driving under the influence of alcohol, OCGA § 40-6-391.

1. Defendant contends that the results of an intoximeter test were inadmissible because he was denied his right under OCGA § 40-6-392 (a) (3) to have an independent urine test. He enumerates as error the denial of his motion in limine, and his motions to dismiss made at the close of the State's evidence and of all the evidence.

*Puett v. State*, 147 Ga. App. 300 (248 SE2d 560) (1978), in which the officers failed to take accused to a hospital where he had arranged for a test, held: "The law gives one accused of driving under the influence of alcoholic beverages the right to have a chemical analysis of his blood and urine by a qualified person of his own choosing. But of what value is that right if the accused is in custody of law enforcement officials who either refuse or fail to allow him to exercise the right? We hold that under such circumstances there is coupled with the right granted to the accused a corresponding duty on the part of law enforcement officers not to deny him that right."

Subsequent decisions point out that where defendant is afforded the opportunity for an independent test, the fact that he is unable to obtain the method of his own choosing does not of itself require suppression of the State's test results. *State v. Laycock*, 151 Ga. App. 145, 147 (259 SE2d 150) (1979); *Grizzle v. State*, 153 Ga. App. 364 (1) (265 SE2d 324) (1980). OCGA § 40-6-392 (a) (3) provides the predicate: "[T]he justifiable failure or inability to obtain an additional test shall not preclude" the evidence of the State's test.

The requirements imposed upon defendant are stated in *Harper v. State*, 164 Ga. App. 230, 231 (1) (296 SE2d 782) (1982): "Before the

duty of the police arises to transport a defendant to the location of the test, he must first show that he had made arrangements with a qualified person of his own choosing, that the test would be made if he came to the hospital, that he so informed the personnel at the jail where he was under arrest, and that those holding him then 'either refused or in any event failed to take him to the hospital for that purpose.'" Accord *Lovell v. State,* 178 Ga. App. 366, 369 (2) (343 SE2d 414) (1986).

According to defendant, he was arrested for driving under the influence of alcohol, informed of his rights under the law and administered the breath test by an officer. He requested a urine test and was taken to the Tift General Hospital. There one of the officers stated he "wants a blood/urine test," but defendant denied that and testified he requested a urine test. He paid a $26 fee and was taken to the back of the emergency area where he was informed that the hospital did not give urine tests. This was confirmed by a doctor present. Defendant asked permission to call a Dr. Smith or a Dr. Chiang. He also requested that he be taken to the Colquitt County Hospital "or anywhere where they'd give a urine test." He was not taken for the reason, he asserts, that one of the officers had a grudge against him.

The officers who arrested defendant and transported him to the hospital gave a different version. Defendant requested a separate test, and "urine/blood" was written on the form one of the officers filled out. Defendant was taken to the hospital, paid a fee and completed the paperwork to have a blood test done, but before it could be accomplished he stated he did not want a blood test but wanted a urine test. Defendant was informed that the hospital did not perform urine tests for alcohol. Defendant protested and one of the officers told him he could still take the blood test. Defendant refused and demanded a urine test. He became "belligerent and fussing" so the officers handcuffed him and took him back to the police station. Both officers denied that defendant asked them to call either of the two named doctors or that he sought to be taken to Colquitt County Hospital. One officer testified that he would not have taken defendant to Colquitt Hospital because it was outside his jurisdiction and too far away, about thirty miles. It was routine for the Tifton Police to take an accused to Tift Hospital.

Defendant contends that the State has the burden of showing the statutory requirements were met, citing *Munda v. State,* 172 Ga. App. 857 (1) (324 SE2d 799) (1984). Here the evidence showed that defendant was informed of his right to an independent test as required by the code section and that he requested another test. Defendant testified that when the Tift Hospital did not perform the test he wanted, he sought permission to try elsewhere. The officers accompanying him denied this. Defendant admitted that he assumed the

doctors and Colquitt Hospital had the ability to perform a urinalysis for alcohol, but he did not know. Because there was conflict, the evidence did not establish as a matter of law that defendant met the requirements necessary to show that he was denied the opportunity to obtain such test. The case primarily relied upon by defendant, *State v. Hughes*, 181 Ga. App. 464, 466 (352 SE2d 643) (1987), affirmed suppression, which was occasioned by a finding for defendant by the trial court based upon conflicting evidence. See also *State v. Mallory*, 180 Ga. App. 815, 816 (350 SE2d 823) (1986).

"Questions of credibility arising out of conflict in testimony regarding the circumstances of pursuing the additional testing . . . [are] for resolution by the court." *Lovell v. State*, supra at 369. See *State v. Dull*, 176 Ga. App. 152, 153 (335 SE2d 605) (1985). In this case the trial court found for the State and there was evidence to sustain the finding that defendant made no arrangements with a qualified person to obtain a separate test. Thus, the results of the State's test were properly considered.

Whether or not the trial court correctly found that defendant "elected" a particular test is not reached because there was ample evidence to sustain the finding that defendant was not denied the opportunity to obtain a separate test.

2. Defendant contends that the State failed to meet its burden of proving that the initial test for alcohol conducted at the option of the police was performed according to methods approved by the GBI by an individual possessing a valid permit issued by the GBI. Officer Zeigler who conducted defendant's test stated that certificates were issued for one year and the certificate introduced into evidence showed it was issued on January 1, 1986. Since defendant was tested on January 18, 1987, he argues Zeigler was not certified when he gave the test. However, the certificate also clearly states "This permit expires Dec. 31, 1987."

Furthermore, Zeigler testified that he was certified at the time he administered the test. That testimony was admissible and sufficient to establish the fact at issue. See *Clarke v. State*, 170 Ga. App. 852 (319 SE2d 16) (1984); *Drayton v. State*, 175 Ga. App. 803, 806 (5) (334 SE2d 720) (1985).

As to whether proper methods were employed, defendant made no such objection against the introduction of the evidence. Besides, the operator stated that he used procedures based upon instruction received from the Georgia Department of Public Safety for that machine. Defendant has failed to establish a legal mandate for suppressing the result of the breath test.

*Judgment affirmed. Birdsong, C. J., and Banke, P. J., concur.*

DECIDED MAY 3, 1988.

G. G. Joseph Kunes, Jr., for appellant.
David R. Hege, Solicitor, for appellee.