A92A1393. MELVIN v. THE STATE.
(423 SE2d 718)

Birdsong, Presiding Judge.

Johnny David Melvin was charged by accusation with one count of DUI (OCGA § 40-6-391 (a) (1)) and driving with an unlawful blood alcohol level (OCGA § 40-6-391 (a) (4)). In a bench trial, he was found not guilty of DUI and guilty of driving with an unlawful blood alcohol level; his motion for new trial was denied. Melvin appeals the denial of his motion for new trial.

Appellant was stopped for speeding. The police officer observed appellant was unsteady on his feet and his eyes were "real glassy." After being given an alcosensor test, appellant was arrested and transported to the police station and administered an Intoximeter 3000 test. Appellant was informed of his test result (.19 grams) and

right to additional testing; he requested a blood test.

Appellant also was informed that he had the responsibility to make the arrangements for his additional test, and that he would be transported to the hospital "if" he could make the necessary test arrangements. The arresting officer phoned the Houston County Medical Center and allowed appellant to converse with the emergency room nurse concerning the test. The nurse informed appellant that his attorney would have to be present before the blood test would be performed. Appellant informed the arresting officer of this requirement. The arresting officer overheard appellant on the phone informing the nurse that he did not have an attorney. The arresting officer also talked to the nurse to confirm personally what he had been previously told about the hospital's requirement that before they performed a blood alcohol test the person's attorney must be present or must call and authorize the procedure. The arresting officer observed appellant fumbling in his wallet for his attorney's number, and suggested that he might be able to look the number up in a phone book. Appellant was given a phone book. Melvin attempted to locate his attorney but could not do so with one phone call. He asked and was allowed to make another call to a friend whom he requested to locate his attorney and meet him at the hospital.

The arresting officer, based on all his observations and appellant's comments, concluded appellant could not meet the hospital's requirements. Generally, when a person is not belligerent or causing a disturbance (and appellant was cooperative) the police do not restrict the number of phone calls he may make. After his calls were completed, appellant never asked to make any more calls. Appellant was then fingerprinted, placed in a jail cell, and the arresting officer returned to patrol duties. The arresting officer did not transport appellant to the hospital that evening primarily because appellant did not contact an attorney. Approximately three hours later, appellant's friend arrived at the police station without an attorney. Although appellant never received a blood test, the arresting officer testified he would have transported appellant to the hospital had he made the necessary arrangements to take the test. Appellant never informed the police that he had made the necessary arrangements for his test, nor did he indicate to anyone that an attorney would be able to meet him at the hospital.

Appellant testified that he told the nurse he had the money to pay for the test, but she informed him that his attorney must be present. Appellant asked the nurse to tell the officer what she had said and handed the officer the phone. The officer "locked [appellant] back in the cell and that was the last time [appellant] was able to use the phone." He was not given an opportunity to try to obtain an attorney, and he was never transported to the hospital. However, appel-

lant also testified that he had "made an attempt" to call his attorney, but was unable to do so as he had only the attorney's office number. Being unable to contact his attorney, appellant "called [his] employer" and told him to meet him at the hospital with appellant's attorney. Appellant claimed that if he had been allowed to go to the hospital he could have had an attorney there.

On cross-examination appellant clarified his testimony on direct regarding being returned to the jail cell, by explaining that he had been placed back in his cell within a 10-15 minute range after the hospital call was concluded and that he had been allowed to call his employer and a bail bondsman. Appellant claimed that he "wasn't able to" make any other calls that evening. He did not ask anyone at the police station if he could make any more calls as he assumed he was being transported to the hospital because the arresting officer told appellant he would take him there. However, he was locked up and left alone in a cell thereafter. Appellant claimed that he had the money to make calls and, consequently, if he had been transported to the hospital he could have called his attorney from there. He did not attempt to call any other attorney. *Held*:

1. Appellant asserts the trial court erred in admitting the intoximeter test results, as he had been denied his right to an independent test.

(a) " 'Questions of credibility arising out of conflict in testimony regarding the circumstances of pursuing the additional testing . . . (are) for resolution by the court.' " *Dozier v. State*, 187 Ga. App. 51, 53 (1) (369 SE2d 328). On appeal evidence must be viewed in the light most favorable to support the verdict; an appellate court determines evidence sufficiency and does not weigh evidence or determine witness credibility. *Grant v. State*, 195 Ga. App. 463 (1) (393 SE2d 737).

(b) "OCGA § 40-6-392 (a) (3) allows one accused of driving under the influence of alcoholic beverages the right to have a chemical analysis of his blood and urine by a qualified person of his own choosing, and there is a corresponding duty on the part of law enforcement officers not to refuse or fail to allow the accused to exercise that right. [Cit.] While it is not the officer's duty to insure the performance of an independent test, he cannot prevent a defendant from exercising his right to such a test. [Cit.] The statute also states that 'the justifiable failure or inability to obtain an additional test shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer.' It is incumbent on the trial court to determine whether the failure or inability to obtain the additional test is justified. In making that determination, the trial court must decide if, under the totality of the circumstances, the officer made a reasonable effort to accommodate the accused who seeks an indepen-

dent test." *State v. Buffington*, 189 Ga. App. 800, 801-802 (377 SE2d 548).

Appellant places great emphasis on the fact that had he been transported forthwith to the hospital he could have contacted his attorney and met the hospital testing requirements in time to obtain a valid test. Apart from the speculativeness of this argument, as the record does not establish any actual police interference in appellant's contacting the hospital or others who could assist him, we find the police had no requirement to transport appellant until after appellant adequately arranged for testing by meeting the hospital testing requirements. "Where a defendant makes no arrangements to secure an independent test, the mere fact that it was not made 'fails to disclose any reason to suppress the evidence merely because the defendant was unable to obtain a test of his own choosing.' [Cit.] Before the duty of the police arises to transport a defendant to the location of the test, he *must first show* that he had made arrangements *with a qualified person* of his own choosing, that the test would be made if he came to the hospital, that *he so informed* the personnel at the jail where he was under arrest, and that those holding him then 'either refused or in any event failed to take him to the hospital for that purpose.' [Cit.] Because appellant never informed anyone that a test was available . . . it cannot be said that the arresting officers breached their duty and prevented him from exercising his right to an independent test; and it was not their duty 'to insure the performance of such test.' " (Emphasis supplied.) *Harper v. State*, 164 Ga. App. 230, 231 (296 SE2d 782). Further, "[i]n cases such as this where the testimony is conflicting, the credibility of the witnesses is for the trial court, as the trier of fact, and in such cases the findings of the trial court will not be reversed if there is evidence from which the trial court could conclude that a reasonable effort was made to accommodate the request for an independent test and the law enforcement officers did not prevent the defendant from obtaining the independent test. [Cit.] As there is evidence supporting the ruling of the trial court, it will not be reversed. The mere fact [appellant] was not able to obtain an independent test does not require the exclusion of the State's test." *Thornhill v. State*, 202 Ga. App. 826, 827 (415 SE2d 473). The trial court did not err in admitting the evidence of the State's intoximeter results. Compare *Pruitt v. State*, 203 Ga. App. 125 (416 SE2d 524) (prosecution satisfied its burden of proof by the procedure used).

2. Appellant asserts the trial court erred by refusing to allow him to give limited testimony and be subject to cross-examination only over the issue of the admissibility of the independent chemical test, that is, the issue of the admissibility of the State's intoximeter testing results. Appellant was granted a continuous objection to being denied

the right to give such limited testimony. Thereafter, he testified and was subject to the full range of cross-examination covering matters relevant to both offenses of which he was charged.

Pretermitting the question whether error occurred as enumerated (cf. *Williams v. State*, 231 Ga. 508, 509 (2) (202 SE2d 433)) is whether any such error would have been harmless. For the following reasons, we find that it would.

First, the record establishes that appellant was found not guilty by the trial judge of the offense of DUI. Accordingly, any issue whether appellant was prejudiced by being compelled to testify concerning this particular offense has been rendered moot.

Secondly, assuming appellant had been allowed to give limited testimony and to be subjected to restricted cross-examination as proposed at trial, he still would have been subjected to full and searching cross-examination as to each and every matter relevant to the issue of the admissibility of the State's intoximeter results. The record reveals that appellant's proposed limited testimony and restricted cross-examination encompassed the testimony of the accused "on the question of the admissibility of that [the State's intoximeter] test." Thus, the State would have been entitled, *in any event*, to cross-examine appellant searchingly as to all matters relevant to that limited issue. OCGA § 24-9-64. Under Georgia law any evidence is relevant which logically tends to prove or disprove any material fact which is at issue in the case, and every act or circumstance serving to elucidate or throw light upon a material issue or issues. *Smith v. State*, 181 Ga. App. 136 (1) (351 SE2d 530). Thus, we find that, as to any testimony falling within this category, no error occurred by virtue of the trial court's ruling.

Thirdly, as to any evidence disclosed by this procedure, which would have had no relevance as to the issue of admissibility of the State's intoximeter test, we find, beyond a reasonable doubt, that the disclosure of this evidence in a non-jury trial did not contribute to the subsequent finding by the trial judge that appellant was guilty of the offense of driving with an unlawful blood alcohol level. "The trial judge is presumed to know the law and to be capable of separating admissible grains of evidence from inadmissible chaff." *Rowe v. Rowe*, 195 Ga. App. 493, 494 (2) (393 SE2d 750). The record fails to establish that the trial judge did not so perform his duties in this case.

*Judgment affirmed. Beasley and Andrews, JJ., concur.*

DECIDED OCTOBER 13, 1992.

*Williams, Sammons & Sammons, George L. Williams, Jr.*, for appellant.

*Robert E. Turner, Solicitor, Cynthia T. Adams, Assistant Solici-*

*tor*, for appellee.