A96A0113. PERGUSON v. THE STATE.
(470 SE2d 909)

SMITH, Judge.

Herbert Eugene Perguson was indicted for two counts of child molestation and two counts of aggravated child molestation. A jury found Perguson guilty of all four offenses, and judgments of conviction and sentences were entered on the verdict. Perguson appeals following the denial of his motion for new trial.

Construed to support the verdict, the evidence presented at trial showed that Perguson was accused by his ten-year-old stepdaughter of having molested her since she was eight years old. She claimed he performed several acts of oral sodomy, licked her breasts, and pene-

trated her vagina with his penis on a number of occasions. The victim testified that Perguson required her to participate in these sexual activities as a condition of allowing her to participate in other activities, such as swimming or miniature golf. She also testified that she and Perguson watched sexually explicit videotapes together.

Before reporting this molestation to her mother, the victim told her mother that a school photographer touched her breast and commented about her breasts. The victim testified at trial that she falsely accused the photographer of making the comments, but she maintained that the touching did take place. Her mother testified, however, that the victim admitted to her that the allegations against the photographer were not true; she believed her daughter had accused the photographer in order to ascertain whether her mother would believe her if she accused Perguson.

Perguson testified and denied that he molested his stepdaughter. He admitted, however, that he allowed her to view the sexually explicit tapes when she discovered them, and that he sometimes viewed these tapes with her.

1. Perguson contends the trial court's jury charge on the definition of aggravated child molestation was erroneous. In defining this offense for the jury, the court charged OCGA § 16-6-4 (c) in its entirety. That subsection defines aggravated child molestation as follows: "[a] person commits the offense of aggravated child molestation when he commits an offense of child molestation which act physically injures the child or involves an act of sodomy."

The indictment charged Perguson only with committing aggravated child molestation by committing sodomy. Perguson argues that the court's charge raised a reasonable possibility that the jury convicted him of aggravated child molestation by committing an act of child molestation that physically injured the victim, a crime with which he was not charged. We are constrained to agree.

It is generally not error to charge an entire Code section even though part of that section may be inapplicable to the allegations and the evidence. *Cottingham v. State*, 206 Ga. App. 197, 198 (2) (424 SE2d 794) (1992). In most cases, any inapplicable portions of a charged Code section are deemed merely unnecessary and not harmful. Our courts have consistently cautioned, however, that when the indictment specifies the commission of a crime by only one of several methods possible under the statute, if a reasonable possibility exists that the jury may convict the defendant of committing the crime in a way not alleged in the indictment, it is reversible error to charge the entire Code section. See *Childs v. State*, 257 Ga. 243, 252-253 (17) (357 SE2d 48) (1987); *Pettway v. State*, 204 Ga. App. 804 (420 SE2d 619) (1992).

The Georgia Supreme Court addressed this issue recently in

*Dukes v. State*, 265 Ga. 422 (457 SE2d 556) (1995). In *Dukes*, the defendant, a wrecking service and body shop owner, was charged with theft by taking of two cars by unlawfully taking them. At trial, the court charged the jury on the entire statute defining theft by taking, which provides that the crime may be committed in two ways: by unlawfully taking another's property or by unlawfully appropriating another's property while in lawful possession of it. The jury convicted the accused of two counts of theft by taking. The Supreme Court reversed one of the two convictions, reasoning that the evidence showed that one of the cars was placed in his possession lawfully; the charge therefore could have misled the jury into believing they could convict the defendant of theft by taking in that manner, despite the fact that the indictment accused him only of unlawful taking. Id. at 423-424.

The jury charge in *Dukes* violated the defendant's due process rights because the court did not instruct the jury that although the entire Code section was being charged, their consideration must be limited to the manner of committing the crime specified in the indictment. Id. at 423. Under the charge as given, the jury could have relied upon the evidence presented at trial supporting a different method to convict the defendant of committing an uncharged crime.

The same is true here. Evidence was presented from which the jury could have convicted Perguson of aggravated child molestation by committing acts of sodomy, which was charged. Evidence was also presented, however, from which the jury also could have believed that Perguson committed acts of child molestation that physically injured the child. The doctor who examined the victim the day after she reported being molested testified that the physical examination revealed a "tear" in the child's hymen indicative of a "severe penetrating injury" that would have been painful when it occurred. She testified that this injury was "very much" consistent with penile penetration. Contrary to the State's protestations that this was not a physical injury, the doctor herself characterized this tear as a "healed injury."

This evidence established the elements of the crime of aggravated child molestation by showing an act of child molestation that physically injured the victim. The court charged the entire Code section even though the indictment charged Perguson only with aggravated child molestation involving sodomy; the court gave no instruction limiting the jury's consideration of aggravated child molestation to acts involving sodomy. Given the court's charge, the evidence presented, and the absence of a limiting charge, the jury could well have believed that Perguson committed aggravated child molestation by committing an act of child molestation that physically injured the victim. Under these circumstances, *Dukes* mandates that the convic-

tions for aggravated child molestation must be reversed.

2. Pointing to conflicts in the testimony of the victim, Perguson complains of the trial court's denial of his request to charge OCGA § 24-9-85 (b). That statute provides that "[i]f a witness shall willfully and knowingly swear falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence." The court ruled that the requested charge was covered in the charge on impeachment. Perguson correctly points out that the impeachment charge is different. It does not cover wilful and knowing false swearing; it provides that even when a witness is successfully impeached as to a material matter, the jury may give other portions of the witness's testimony whatever credit they deem proper. OCGA § 24-9-85 (a). Although the trial court also charged on the credibility of witnesses, this Court has rejected the argument that the principle embodied in OCGA § 24-9-85 (b) is covered by such a charge. *Blount v. State*, 172 Ga. App. 120, 122 (4) (322 SE2d 323).

Nevertheless, we find that the trial court's denial of the request to charge was correct for a different reason. "OCGA § 24-9-85 (b) is applicable where the witness admits that he wilfully and knowingly swore falsely, or where the testimony is such as to render the purpose to falsify manifest." (Citations and punctuation omitted.) *Fugitt v. State*, 256 Ga. 292, 298 (6) (348 SE2d 451) (1986). To support his claim that OCGA § 24-9-85 (b) applies here, Perguson relies on evidence that the victim told the doctor no oral/penile contact had occurred, yet she testified at trial to exactly such contact. He also relies on her failure to report digital penetration until her testimony at trial and on the victim's false accusation against the photographer. These circumstances certainly demanded a charge on impeachment, which was given. They do not, however, "render the [victim's] purpose to falsify manifest." *Fugitt*, supra. They do not lead to the conclusion that the victim wilfully and knowingly testified falsely. Under these circumstances, the victim's credibility was for the jury under proper instruction from the court regarding credibility and impeachment. Id. The trial court correctly denied Perguson's request to charge on OCGA § 24-9-85 (b), and a trial court's ruling right for any reason must be affirmed. *Stovall v. State*, 216 Ga. App. 138, 139 (1) (453 SE2d 110) (1995).

3. Perguson was scheduled to testify on Wednesday morning. On Tuesday evening he became ill. On Wednesday morning, he was "wobbly" and "not alert," and his attorney stated that he could not assist in his own defense. The trial court revoked Perguson's bond and ordered Perguson taken into custody and delivered to the hospital so that his condition might be evaluated. The court then recessed. After the emergency room physician sent the court a letter explaining he believed the source of the problem had been found and was

being treated, Perguson's counsel moved for a mistrial, which was denied. Based on the information provided by the doctor, court was again recessed until the following Monday, when the court expected to hear from Perguson's physician about his condition before deciding whether to resume the trial. Perguson was discharged from the hospital on Sunday.

On Monday, Perguson's treating physician, Dr. William Martin, appeared before the court. He testified that laboratory tests showed Perguson suffered from a serious condition that could possibly lead to severe kidney damage if not treated properly. When Perguson was admitted to the hospital he was described as "mildly confused." Dr. Martin testified, however, that Perguson was not confused when he first examined him on Wednesday evening, although he may have been "a little cloudy . . . in responding." Over the time Dr. Martin observed Perguson in the hospital, he appeared "clear" and "oriented and did not appear confused."

Perguson did have a memory lapse concerning the events from Tuesday afternoon until Wednesday morning, but other than the memory loss for that short time period his memory appeared to Dr. Martin to be intact. A consulting neurologist did not find any mental disturbance or memory loss other than the short lapse from Tuesday afternoon to Wednesday morning. A psychiatrist believed Perguson's mental condition could be caused by stress and prescribed medication for that condition; that medication, according to Dr. Martin's testimony, can cause some drowsiness or possibly dizziness and could have affected Perguson's memory. Nevertheless, Dr. Martin testified that he believed Perguson was able to continue the trial. At the conclusion of Dr. Martin's testimony, Perguson renewed his motion for a mistrial. The court denied the motion and ordered that the trial resume immediately. At Perguson's request, the court explained to the jury that the delay was caused by Perguson's medical problem but that it was not his fault and the problem was being treated. Perguson was then called to the stand in his own defense.

Perguson recognizes that the issue of whether to grant a mistrial is within the sound discretion of the trial court and that this Court will not disturb the trial court's ruling absent an abuse of discretion. *Davis v. State*, 262 Ga. 692, 693 (424 SE2d 628) (1993). He asserts, however, that the court abused its discretion in this case. He argues that his mental condition raised serious constitutional concerns, given that this trial amounted to a swearing contest between him and the victim, and that both his demeanor and the substance of his testimony were crucial. As grounds for a mistrial, he points to his medical condition, including his loss of memory and the effects of the prescribed medication, and the prejudicial effects of the delay on the jury before his testimony.

We agree with the State that Perguson's argument that his condition affected his testimony is belied both by Dr. Martin's testimony and by Perguson's own testimony after the trial court's ruling. Perguson testified with a clear grasp of details and never indicated any problems recalling information. As to prejudicing the jury, the trial court was careful to disclose to the jury only such information as was agreed to or even suggested by Perguson's counsel. The issues raised by Perguson's illness during this trial were unusual, and we find the court's handling of the problems presented by these events to be exemplary. We find no error.

4. Perguson called the child's maternal aunt, Susan Demorest, as a witness. When his counsel asked her what she observed about the victim's relationship with Perguson, the State objected on the ground that this questioning sought to elicit testimony regarding specific acts of good character. A colloquy ensued between counsel and the court, during which both the court and the State appear to have been addressing the relevance of the evidence as well as the ground originally stated. The court agreed with the State that this line of questioning could not be pursued.

A character witness may not be questioned regarding specific instances of conduct. *Ogletree v. State,* 211 Ga. App. 845, 848 (440 SE2d 732) (1994). We agree with Perguson, however, that no objection was sustainable on that ground against the evidence proffered. Although Demorest was eventually called upon to be a "character" witness, that was not her only role; she was also a "fact" witness. In the challenged questions, she was asked to relate her observations regarding the nature of the relationship between Perguson and his stepdaughter and between Perguson and his wife. Some of the excluded evidence was doubtless either irrelevant or only marginally relevant, but we cannot agree with the trial court and the State that none of this evidence was relevant. The credibility of the victim was in issue, and information about her relationship with Perguson was relevant to the jury's consideration of the truthfulness of her accusations against him.

But other evidence of the relationships also was admitted in this case. The child's mother testified to the nature of her relationship to Perguson. She also testified that Perguson and his stepdaughter had engaged in a wide variety of activities together before the accusation. Demorest testified without objection about Perguson's relationship with the child, describing him as a "very loving, kind, very giving, father figure." Harm, as well as error, must be shown for reversal. *McIntyre v. State,* 266 Ga. 7, 10 (4) (463 SE2d 476) (1995). Because other testimony bearing on this issue was admitted, we find it highly probable that the exclusion of this evidence did not contribute to the jury's verdict. See *Bennett v. State,* 254 Ga. 162, 164-165 (3) (326

SE2d 438) (1985). Consequently, even if the court's ruling was error, it was harmless.

5. Perguson contends the trial court erred in preventing him from questioning the doctor who examined the victim regarding Georgia's mandatory child abuse reporting law and the punishment for failing to report child abuse. See OCGA § 19-7-5. No issue was raised regarding the doctor's report of the abuse; the victim's mother called the police. This testimony was not relevant to the issues in the case.

6. Count 3 of the indictment charges Perguson with child molestation "by *touching* his penis to [the victim's] vaginal area." (Emphasis supplied.) Perguson asserts that a fatal variance exists between the allegations in the indictment and the proof at trial because the victim testified not that he *touched* her vagina with his penis but that he *penetrated* it. This is patently without merit. In order to penetrate the child, Perguson would, of necessity, have to touch her. An indictment is sufficient if it contains the elements of the offense intended to be charged and sufficiently apprises the defendant of the charges he must defend. If the defendant is informed so that he may prepare his defense and not be surprised at trial, the indictment is sufficient. *Scott v. State*, 207 Ga. App. 533, 534 (428 SE2d 359) (1993). This indictment meets that test. It placed Perguson on notice that he was charged with a particular type of contact constituting child molestation. It was therefore sufficient.

*Judgment affirmed in part and reversed in part. Pope, P. J., and Andrews, J., concur.*

DECIDED APRIL 10, 1996 —
RECONSIDERATIONS DENIED MAY 2, 1996 —

*Lenzer & Lenzer, Robert W. Lenzer, Thomas P. Lenzer*, for appellant.

*Daniel J. Porter, District Attorney, Pamela D. South, Assistant District Attorney*, for appellee.