# IN THE COURT OF APPEALS OF IOWA

No. 23-1816
Filed October 1, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DEVIN CORNELIUS GREGORY,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Washington County, Joel D. Yates, Judge.

A defendant appeals his convictions for sexual abuse in the third degree, sexual exploitation of a minor, and supplying alcohol to persons under the legal age. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Bradley M. Bender and Michelle E. Rabe, Assistant Appellate Defenders, for appellant.

Brenna Bird, Attorney General, and Joshua Henry, Assistant Attorney General, for appellee.

Considered without oral argument by Tabor, C.J., Ahlers, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**TABOR, Chief Judge.**

After hearing testimony about his interactions with a sixteen-year-old girl, a jury convicted Devin Gregory of four crimes: third-degree sexual abuse, sexual exploitation of a minor, and two counts of supplying alcohol to persons under the legal age. He appeals those convictions, raising five claims. First, he argues the district court should have struck for cause a juror whose daughter had experienced sexual assault. Second, Gregory contends the court should have granted a mistrial based on his health issues. Third, he alleges the State offered insufficient evidence for his convictions. Fourth, he contests the court's lack of reasons for denying his motion for new trial. And fifth, Gregory challenges his sentence.

Because the district court properly exercised its discretion in denying Gregory's motion to strike the juror, his motion for mistrial, and his motion for new trial, we reject those claims. The record also shows substantial evidence supporting the verdicts and a proper rationale for his sentence. So we affirm.

## I. Facts and Prior Proceedings

A.F. started working at Walmart in the summer of 2022. She grew close to her coworker Andrea.[1] Then sixteen, A.F. recalled Andrea "took me under her wing," offering "tips and tricks" about the job. "She was like my work mom." On August 3, Andrea invited A.F. to her home for a barbecue and introduced the teenager to her husband, Devin Gregory. Gregory was forty-four years old.

A.F. returned to the Gregory home for a second barbecue on August 9. This time, her eighteen-year-old boyfriend, T.W., came along. Andrea gathered bottles

---

[1] Andrea's full name is Karolla Andrea Gregory. A.F. called her Andrea, as will we in this opinion. We will use the last name, Gregory, for the defendant on appeal.

of alcohol on the dining room table. And both she and Gregory offered alcohol to the teenaged guests. Both intoxicated, A.F. and T.W. had sex in a guest bedroom after the Gregorys encouraged them to do so. During their visit, Gregory showed his collection of guns and bows and arrows to A.F. and T.W.

A third invitation came the next day. So A.F. and T.W. returned to the Gregorys' home on August 10. As they were hanging out, the hosts took the teenagers into a guest bedroom to show them a massage table. Gregory said he could massage A.F.'s "back and legs because that's what's appropriate." After T.W. left the room, Gregory told A.F.: "I can massage more than just your back and legs." She "gave him a look," and he returned to the living room.

But later during the same visit, Gregory hugged A.F. from behind and started "swaying" with her. She told him: "Stop, can you get off." But he ignored her wishes, put his hands under her shirt, and started fondling her breasts. A.F. turned to Andrea, saying: "Help. He's your husband." Andrea replied: "I'm sorry. He gets a little handsy sometimes. He has a mind of his own."

After that, Gregory put his hands down A.F.'s shorts, rubbing her clitoris and trying to "stick his fingers inside of [her]." A.F. recalled that Gregory eventually stopped, hugged her again, "slapp[ed her] butt," and walked out.

A.F. then left with T.W., who had to work. But A.F. returned alone to confront Andrea about why she didn't help. Andrea told A.F. that Gregory had "needs and wants that [Andrea] can't fulfill." Then, as if on cue, Gregory came into the room and started rubbing A.F.'s back and shoulders. He asked if A.F. was "okay with what [he] was doing earlier." She replied: "No, actually, I wasn't okay with what you were doing." But Gregory persisted, asking, "Why can't we have a

little fun?" He also lifted her shirt and asked to "suck on" her breasts. She pushed his head away and refused. He then said: "if you're not going to have sex with me, can I at least get photos of you?" He asked A.F. to take nude photos and send them to Andrea. A.F. declined.

A.F. later told her counselor what happened, and the Iowa Department of Health and Human Services reported the interactions to police. After the police investigation, the State charged Gregory with sexual abuse in the third degree, a class "C" felony in violation of Iowa Code sections 709.1 and 709.4(1)(a) (2022); sexual exploitation of a minor, a class "C" felony in violation of sections 728.12(1) and 903B.1; and two counts of supplying alcohol to a person under age, serious misdemeanors in violation of section 123.47(1) and (5).[2] A jury heard the case in August 2023 and returned guilty verdicts on all four counts.

The court sentenced Gregory to prison terms not to exceed ten years on the felony convictions; those sentences were to run consecutively. The court imposed one-year sentences on the misdemeanors, to run concurrently with each other and concurrently with the felony counts. In the end, he faced an indeterminate twenty-year term. Gregory appeals his convictions and sentence.

## II. Analysis

### A. Did the district court abuse its discretion in not striking a potential juror for cause?

Gregory alleges the district court should have granted his motion to strike Juror 2 because she "expressed concerns about her potential ability to be fair and

---

[2] The State also charged Andrea for sexual abuse as an aider and abettor and two counts of supplying alcohol to a minor. The jury convicted her as charged, but she is not a party to this appeal.

impartial" given her experience with the sexual abuse of her daughter. The issue came to the court's attention when the potential juror noted on a jury questionnaire that she had a family member that's been affected by sexual abuse. During individual voir dire, Juror 2 revealed that her then twenty-year-old daughter had been sexually abused at age thirteen by "a stranger on the street." Juror 2 explained: "She's healing. She's been through counseling, yeah, but it's going to affect her for a while." In response to a question from the judge, the juror acknowledged that "the defendants had nothing to do with [her] daughter's situation." When asked if she could put aside what happened to her daughter and be fair to Gregory, Juror 2 replied: "I think so. I will try my best, yeah."

As a follow-up, defense counsel probed:

My question is if you hear in evidence that the accuser in this case was sixteen years old at the time, is that going to cause you to sort of start identifying the evidence that you're hearing in this case with what your daughter went through? I think you can understand why I'm concerned about that.

Juror 2 acknowledged counsel's concerns and replied:

So I'm a pastor's wife. I hear a lot of things. I hear things from both sides lots of times, and I try to put myself in their shoes at the moment. So I do my best, but I—I don't know, to be honest, but I will—before the Lord and before the court, I have sworn that I will be fair and listen to the evidence, and so I will do my best, and I promise to do that.

When asked again if she could set aside her personal experiences, Juror 2 reiterated: "I will try my best as a human being before the Lord. . . . Yes, I think I could." Still, defense counsel moved to strike Juror 2, reasoning: "[T]oward the end she was unable to confirm that she would be able to follow the court's instructions and be a fair and impartial juror. Quite a bit of hesitation as she talked."

The district court denied the motion to strike, finding it was not a close call.[3] As the court noted, Juror 2 answered on her questionnaire that her experience would not prevent her from sitting on the jury. The court also reflected on Juror 2's response during voir dire: "She on several occasions said she would do the best she could, and she also indicated that she felt she could be fair and impartial, and I don't know what else we can expect or ask of people."

Strikes for cause fall under Iowa Rule of Criminal Procedure 2.18(5). Paragraph (k) allows a party to object if a would-be juror has "formed or expressed such an opinion as to the guilt or innocence of the defendant as would prevent the juror from rendering a true verdict upon the evidence submitted on the trial." Paragraph (o) applies where "the circumstances indicate the juror would have an actual bias for or against a party." District courts have broad discretion in ruling on for-cause challenges to potential jurors; so we review for abuse of that discretion. *State v. Booker*, 989 N.W.2d 621, 632 (Iowa 2023).

Urging us to reverse the district court, Gregory compares Juror 2 to the challenged jurors in *State v. Jonas*, 904 N.W.2d 566, 569–570 (Iowa 2017), and *State v. Neuendorf*, 509 N.W.2d 743, 746 (Iowa 1993). But we don't see the similarity. In *Jonas*, the potential juror expressed "actual bias against gay people in the original questionnaire and during voir dire." 904 N.W.2d at 575. In *Neuendorf*, the potential juror read in the newspaper about a guilty verdict in a codefendant's case, which caused her to believe that Neuendorf "probably [was] equally as guilty." 509 N.W.2d at 746 (alteration in original). Juror 2 expressed no

---

[3] Gregory did not exercise a preemptory strike to remove Juror 2; she served on the jury.

such bias against Gregory. "Familiarity with the trial topic is different from a bias against the defendant or a preconceived view of his guilt." *State v. Doorenbos*, No. 19-1257, 2020 WL 3264408, at *7 (Iowa Ct. App. June 17, 2020). Rather she reiterated that she had sworn to be fair and listen to the evidence, and she repeated her promise to do so. She offered no opinion on Gregory's guilt or innocence. *See State v. Linderman*, 958 N.W.2d 211, 219 (Iowa Ct. App. 2021). We find no abuse of discretion here.

### B. Did the district court abuse its discretion in denying motions for mistrial when Gregory became ill during the trial?

On the second day of trial, in the early afternoon, Gregory was taken to the hospital. Outside the jury's presence, the court reported: "He was having difficulty breathing. He may have even passed out for a brief period of time, and EMTs have been here and taken him." The court recessed the trial for the day.

The next morning, again outside the jury's presence, Gregory's doctor provided an update over the phone. The doctor explained that Gregory suffered from "severe chronic lung disease, what we call restrictive lung disease or post-inflammatory pulmonary fibrosis from having COVID." As for what happened in court, the doctor gave this summary:

> He yesterday had an episode of what I would call cough syncope, and syncope just means loss of consciousness, and it occurs when a person coughs so hard that the venous blood return to the right side of the heart gets decreased to the point where blood flow can't reach the brain adequately, and there is a loss of consciousness that follows. Most of the time when someone loses consciousness, they are unable to process correctly afterwards. They are in a fog. Yesterday he was talking to a brother that is deceased.

The doctor also said that Gregory was receiving high doses of steroids and would be discharged from that hospital that day. The attorneys then asked the doctor a

few questions about Gregory's prognosis.  The doctor remained concerned about the possibility of another severe coughing spell and Gregory's oxygen level, though it had held steady.  Before concluding the call, the court had this exchange with the doctor:

> THE COURT: All right.  Doctor, I think we're getting close to wrapping up.  I'm going to take a stab at trying to summarize, and you let me know if I take too much liberty here.  But based on what you know right now, unless anything changes, you anticipate that Mr. Gregory will be released from the hospital today and that he could be at the courthouse tomorrow, but we will have to closely monitor him, and there are some caveats we'll have to be aware of in terms of his participation going forward.  How is that?
> DR. ASHBY: Judge, I think you got it.  I think that's a very succinct summary.  That's good.

After the medical update, the court brought in jurors who had mentioned scheduling conflicts if the trial spilled over into the next week.  All those jurors agreed that they could manage a longer time commitment.

Outside the jury's presence, defense counsel moved for a mistrial.  Counsel highlighted the uncertainty of his client's health condition:

> It has been told to us that he'll likely be released today, but as of right now, we don't know for sure if that will happen or what time he'll be released.  I think given the fact that he had that kind of an episode—preceding to that, he appeared to be either sleeping or not being able to focus, and given the fact that he was admitted yesterday, I have concerns about his ability to competently assist in his own defense and appreciate what's going on in this very serious criminal trial.

The State resisted.  It argued that Gregory's situation did not satisfy the grounds for a mistrial, citing Iowa Rule of Criminal Procedure 2.19(5)(a)(1), paragraphs (1) or (2).[4]  The court denied the mistrial motion, finding "there was no

---

[4] Paragraph (1) allows the court to declare a mistrial "because of any accident or calamity requiring termination of the trial upon motion of a party for cause shown."

objective evidence that the doctor could point us to that said Mr. Gregory cannot or should not be here tomorrow. With that said, we are going to have to monitor the situation."

Gregory returned to court on day four of the trial. But by late morning, defense counsel renewed the motion for mistrial, asserting that his client was "indicating . . . that he [was] having extreme difficulty following what the witnesses and the attorneys are saying in court." The court again denied the motion.

On appeal, Gregory contends his medical condition warranted a mistrial, citing rule 2.19(5)(a)(1), paragraph (1). We review the court's rulings for abuse of its broad discretion. *State v. Jirak*, 491 N.W.2d 794, 796 (Iowa Ct. App. 1992) (noting trial judges' "considerable discretion" in ruling on motions for mistrial, "since they are present throughout the trial and are in a better position than the reviewing court to gauge the effect of the matter in question on the jury"). We will find an abuse of discretion only when "there is no support in the record for the trial court's determination." *Id*.

Support exists in this record for the court's denial of Gregory's mistrial motions. The district court took appropriate action to address Gregory's medical condition and sought an update from his treating physician the morning after he was taken to the hospital. That update left the door open to continuing the trial the next day. And Gregory returned to the courtroom after a recess of just a day and a half. Granted, defense counsel renewed the mistrial motion after a few hours of testimony. But other than saying their client "was asking to make [a] record" on

---

Paragraph (2) allows a mistrial "when a required continuance would make it impractical to proceed with the same jury."

his inability to concentrate, defense counsel offered no proof—medical or otherwise—to support a continuing health crisis. Although the concerns raised by Gregory's illness were challenging from a trial management perspective, we find the district court handled the events skillfully. *See Perguson v. State*, 470 S.E.2d 909, 913 (Ga. Ct. App. 1996). We find no abuse of discretion.

### C. Did the State present sufficient evidence for all four counts?

Gregory contests the sufficiency of the evidence for all four of his convictions. We review sufficiency claims for the correction of legal error. *State v. Slaughter*, 3 N.W.3d 540, 546 (Iowa 2024). In reviewing Gregory's claim, we are "highly deferential" to the jury's verdicts. *See id*. If those verdicts are supported by substantial evidence, they are binding on our court. *See id*. We will find the evidence substantial if it could convince a rational juror that Gregory was guilty beyond a reasonable doubt. *See id*. "We view the evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id*. (cleaned up). But we consider all evidence in the record, not just evidence supporting guilt. *Id*.

### 1. Sexual abuse in the third degree

For count one, the court instructed the jurors that to convict Gregory of sexual abuse in the third degree, they had to find that the State offered proof beyond a reasonable doubt for the following elements:

> 1. On or about the 10th day of August, 2022, the defendant performed a sex act with [A.F.]
> 2. The defendant performed the sex act by force or against the will of [A.F.]

Attacking the first element, Gregory claims that the State offered insufficient proof that he committed a sex act against A.F. But his only complaint is that A.F.'s testimony was not corroborated. And, of course, corroboration is not required. Iowa R. Crim. P. 2.21(3) ("Corroboration of the testimony of victims shall not be required."); *State v. Knox*, 536 N.W.2d 735, 742 (Iowa 1995) ("The law has abandoned any notion that a rape victim's accusation must be corroborated.").

A.F. testified that during a visit to his house, Gregory was "touching my clitoris again, trying to rub it, trying to sexually arouse me, and then he goes to putting his finger . . . like, rubbing my vaginal opening, . . . and then he tries to stick his fingers inside of me."[5] A.F. testified that she had already told him to stop but he did not stop. She continued:

> I am freaking out inside. I didn't say anything because I told him no already, and if you can't respect that, I'm not going to repeat myself. I know he has weapons in the house that he showed, and he showed all of us, and, like, bragged about. So now I'm getting a little afraid.

A.F.'s testimony, standing alone, was enough to support the conviction for sexual abuse in the third degree. *See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998).

**2. Sexual exploitation of a minor**

For count two, the court instructed the jurors that to convict Gregory of sexual exploitation of a minor, they had to find that the State offered proof beyond a reasonable doubt for the following elements:

> 1. On or about the 10th day of August 2022, the defendant solicited or caused a person under the age of 18 years to . . . engage in a prohibited sex act.

---

[5] The court instructed the jury that the definition of sex act includes "any sexual contact . . . [b]etween the finger or hand of one person and the genitals or anus of another person." *See* Iowa Code § 702.17(3).

> 2. The defendant knew, had reason to know, or intended that the act would be (a) photographed [or] (b) filmed.

The court also instructed the jury that a prohibited sex act includes "nudity of a minor for the purpose of arousing or satisfying the sexual desires of a person who may view a visual depiction of the nude minor."

In support of this count, A.F. testified that after she rebuffed Gregory when he pulled up her shirt and asked to "suck" on her breasts, he requested nude photographs of her:

> He had asked me, well, if you're not going to have sex with me, can I at least get photos of you? I said no. He said, well, can you take photos of yourself, nudes on my phone? I said, no, I can't do that. He said, well, will you take them and send them to Andrea? I said, no.

Gregory claims that the record lacks sufficient evidence that he sought these photographs for the purpose of arousing or satisfying his sexual desires. But that purpose is evident from the context of his request. And Gregory repeats his argument that A.F.'s testimony lacked corroboration. But again, the jury could rely on her testimony alone to find his guilt. *See* Iowa R. Crim. P. 2.21(3). We affirm the jury's verdict on this count.

### 3. Supplying alcohol to a person under legal age

For counts three and four, the court instructed the jurors that to convict Gregory of supplying alcohol to a person under legal age, they had to find that the State offered proof beyond a reasonable doubt for the following elements:

> 1. On or about the 9th day of August, 2022, the defendant gave or otherwise supplied an alcoholic liquor, wine, or beer to [a person under legal age].[6]

---

[6] Count three involved supplying alcohol to A.F. and count four involved supplying alcohol to her boyfriend, T.W.

2. The defendant knew or had reasonable cause to believe that [the person] was under 21 years of age.

Gregory contends that the record "at best" shows that it was Andrea, not him, who made the alcohol available to A.F. and T.W.  We find the evidence sufficient to prove that Gregory had a hand in supplying the alcohol to the two teenagers.

When the State showed A.F. this exhibit, she recognized these bottles as containing the alcohol offered to her by both Andrea and Devin Gregory.



T.W. also confirmed in his testimony that both Andrea and Devin supplied the alcohol that he drank at the barbecue.  Their testimony was sufficient for the jury to convict on counts three and four.  *See State v. Dudley*, 856 N.W.2d 668, 676 (Iowa 2014) (vesting jury with the role of evaluating witness credibility).

### D. Did the district court properly deny motion for new trial alleging that the verdict was against the weight of the evidence?

After the jury convicted him, Gregory moved for a new trial under Iowa Rule of Criminal Procedure 2.24(2)(b)(7), alleging the verdicts were against the greater weight of the evidence.  He also alleged that the district court should have granted

his motion for mistrial based on his illness. The State filed a written resistance to the new trial motion, asserting that it was untimely.[7] The State also resisted on the merits, alleging that the evidence did not preponderate heavily against the verdicts—the standard under *State v. Ellis,* 578 N.W.2d 655, 659 (Iowa 1998).

At the sentencing hearing, defense counsel concentrated on the mistrial, calling it the "more important argument." The State resisted the motion for new trial, asserting "there is no new evidence that would change the circumstances from where it was at the time of the initial denial of the [mistrial] motion." Following the lead of the lawyers, the court said it was denying a new trial based on the State's argument that there was "no new evidence" to revisit the denial of the mistrial motion. The court also relied on "all of the reasons set forth in the resistance."

On appeal, Gregory urges that the district court abused its discretion by giving only a "brief generic" explanation for its denial of his motion for new trial. We find no abuse of discretion. The court was entitled to deny the new trial motion as untimely, based on the State's argument in the resistance.

### E. Did the sentencing court rely on an impermissible factor or restrict its consideration to a single factor?

As his last issue, Gregory argues that the district court abused its discretion in sentencing him to consecutive terms on the felony counts. We review his sentence for the correction of legal error. *See State v. Schooley*, 13 N.W.3d 608,

---

[7] Gregory filed the motions on October 28, 2023—sixty days after the jury verdicts. But Iowa R. Crim. P. 2.24(2)(a) requires new trial motions to be filed not later than forty-five days after the verdict and not later than five days before sentencing. Gregory does not reply to the timeliness argument in his reply brief.

616 (Iowa 2024). We will not vacate a sentence unless the district court abuses its discretion or there is a defect in the sentencing procedure. *State v. Formaro,* 638 N.W.2d 720, 724 (Iowa 2002). A district court's consideration of impermissible factors is an abuse of discretion, which "entitles the defendant to a new sentencing hearing." *State v. West Vangen*, 975 N.W.2d 344, 355 (Iowa 2022).

Gregory's sentencing argument has two parts. First, he contends the district court relied on an impermissible sentencing factor when it cited his lack of accountability. Second, he alleges that the court placed too much weight on the nature of the offenses.

To address these claims, we replay the sentencing hearing. First, the State recommended all counts to run consecutively for an indeterminate term of twenty-two years. In making that recommendation, the State discussed Gregory's "profound lack of accountability." As an example, the prosecutor pointed to the presentence investigation (PSI) report where Gregory described the convictions as "false bullshit." And "[w]hen asked who was affected by his actions, he mentions no one but himself, his wife, and his family. No mention of the victim, no mention of the victim's family, what affect that has had on her."

Next, defense counsel lobbied against consecutive sentences, arguing that a defendant who has gone to trial and maintained his innocence should not be punished "simply because he doesn't apologize or admit any kind of guilt in a PSI." In that same vein, Gregory denied guilt in his allocution, saying: "I didn't actually do this crime. I shouldn't be punished for this crime."

After hearing both sides, the court gave reasons for imposing consecutive sentences on the felony counts:

> I selected the sentence of twenty years. Part of that is Counts I and II being consecutive, and my reason for that sentence and specifically the consecutive nature is the nature of the offenses committed by you and the harm to the victim; lack of accountability from the court's standpoint; your need for rehabilitation and your potential for rehabilitation; and the necessity from protecting the community from further offenses by you and others.

First, Gregory contends the court's reference to his "lack of accountability" was an impermissible sentencing consideration. He recognizes that *State v. Knight*, 701 N.W.2d 83, 87 (Iowa 2005), and *West Vangen*, 975 N.W.2d at 355, accept that "lack of remorse" is pertinent to a defendant's need for rehabilitation and likelihood of reoffending. But Gregory emphasizes that the district court must not choose a harsher sentence based on his decision to go to trial rather than pleading guilty. *See West Vangen*, 975 N.W.2d at 355. From the top, he asks the supreme court to revisit *Knight* and *West Vangen*. Because the case is before us, that option is not available. *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014) ("We are not at liberty to overrule controlling supreme court precedent.").

Short of overruling those cases, Gregory asks us to find that the sentencing judge stepped over the "fine line between considering a defendant's lack of remorse and penalizing a defendant for refusing to plead guilty and insisting on his right to trial." *Knight*, 701 N.W.2d at 87. We disagree that the court's comment about accountability crossed that line. The court had discretion to consider Gregory's "postconviction failure to take responsibility" when determining his sentence. *West Vangen*, 975 N.W.2d at 355–56 (permitting consideration of lack of remorse after defendant expressed intent to appeal conviction, which "made clear she was not taking responsibility for the actions the jury found her guilty of committing").

As his second sentencing complaint, Gregory contends that the court focused too much on the nature of the offense in deciding to impose consecutive terms. *See State v. Dvorsky*, 322 N.W.2d 62, 66–67 (Iowa 1982) (disapproving of sentence imposed based on a single consideration). As he notes, sentencing courts must consider a "host of factors"—including the nature of the offense, the attending circumstances, the age, character, and propensity of the offender, and the chances of reform. *See Formaro*, 638 N.W.2d at 725 (discussing factors in Iowa Code sections 901.5 and 907.5).

Contrary to Gregory's contention, a thorough review of the sentencing record shows the district court considered essential factors. The court discussed the goals of rehabilitation and community protection. And while the court emphasized the harm to the victim, the nature of the offenses, and Gregory's failure to take responsibility, such emphasis "inheres in the discretionary standard." *See State v. Wright*, 340 N.W.2d 590, 593 (Iowa 1983).

## III. Summary

To recap, the district court did not abuse its discretion in denying Gregory's motion to strike Juror 2 for cause. Nor did it abuse its discretion in rejecting the defense request for a mistrial after Gregory's medical emergency. On the sufficiency challenge, the victim's testimony provided ample evidence of Gregory's guilt. On the weight-of-the-evidence challenge, the motion for new trial was properly denied as untimely. And finally, the district court considered proper factors in sentencing.

**AFFIRMED.**